574 A.2d 546

MARY ANN MARKY, PETITIONER–RESPONDENT, v. DEE ROSE FURNITURE COMPANY, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 26, 1990—Decided May 17, 1990.

Before Judges O'BRIEN, HAVEY and STERN.

*Francis T. Giuliano,* argued the cause for appellant (*Mattson, Madden & Polito,* attorneys; *Francis T. Giuliano,* of counsel and on the brief).

*Peter J. Farnsworth* argued the cause for respondent (*Madnick, Milstein, Mason, Weber, Farnsworth & Collazo,* attorneys; *Fredric M. Milstein,* of counsel and on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

At issue in this workers' compensation case is whether petitioner's injuries "arose out of" her employment. The workers' compensation judge found they did and ruled in her favor. Respondent employer appeals. We reverse.

Petitioner was injured on March 19, 1987, while at her place of employment at Dee Rose Furniture (Dee Rose), when she was shot by a man with whom she had had a relationship. Petitioner had been employed by Dee Rose for approximately one year before the shooting. Before her employment with Dee Rose, petitioner began a social or romantic relationship with one Louis Rosa (Rosa). She had gone out with him for at least a year before attempting to break off her relationship with him in February 1986. However, she continued to see him until October 1986, which she described as the "final breakup."

Notwithstanding this breakup, Rosa continued to telephone petitioner and come to her home. She refused to speak to him on the telephone and called police when he came to her home. On March 14, 1987, five days before the shooting, Rosa came to petitioner's home. When she called the police, he hid in the crawl space of the house next door. He was charged with criminal trespass in a complaint filed by one of the officers on that day. When found, he was carrying a knife concealed as a key chain.

Petitioner was employed as an office clerk at Dee Rose and was friendly with a floor salesman, John Brinker (Brinker). Petitioner finished her work day at five o'clock each day and Brinker went on his dinner break at that time. On two consecutive Wednesdays before the shooting on Thursday, March 19, 1987, petitioner had gone to dinner with Brinker. When dinner was completed, she went home and Brinker returned to the store.

On March 19, 1987, petitioner had gone to a store a few blocks from Dee Rose to pick up submarine sandwiches for herself and a female friend. While she was in the store, Brinker came in to pick up an order. Although they walked out of the sub shop together, they got into their own cars and returned to Dee Rose separately.

At about 1:40 p.m. on March 19, 1987, Rosa stopped a police officer to ask for directions. He held a bayonet to the officer's neck and directed him to get into the trunk of a car. During this incident, Rosa obtained the police officer's service revolver and fled in the patrol car. He went to Dee Rose Furniture. Inside the store, he asked at the service desk to speak to John Brinker, saying, "John can I talk to you?" As Brinker walked around a partition wall in the showroom to speak to him, Rosa pulled out the officer's service revolver. As Brinker noticed the gun and sought to get away, Rosa shot Brinker in the middle of his back. When Brinker rolled over onto his back,

Rosa fired another shot into his left abdomen. Brinker died from these gunshot wounds.

Rosa then asked where the office was and proceeded to it, where he confronted petitioner and a coemployee. He fired two shots at petitioner. The second one struck her in the left arm and went into her left side. She alleges, "he screamed at me [saying], 'You won't go out with me, but you'll go out with John for lunch.'"[1] The co-worker heard Rosa tell petitioner that he had been taping telephone conversations of her and knew she had been cheating on him. Petitioner and the co-worker were then held as hostages. When police came to the store, they attempted to negotiate with Rosa. These negotiations continued for about an hour and fifteen minutes. Rosa then shot himself fatally in the chest. The co-worker was not injured.

Petitioner filed a claim petition for workers' compensation benefits for the injuries she received from the gunshot wound inflicted on March 19, 1987. Respondent's answer admitted employment, but denied that the injury arose out of and in the course of employment.

On April 22, 1988, the judge of compensation on an agreed statement of facts found that petitioner was entitled to compensation benefits. After making findings of fact, the judge of compensation concluded:

> I've reviewed all the briefs in this matter and it is clear to the court that the decedent, Louis Rosa, was under the delusional impression that there was a romantic link between the petitioner and decedent John Brinker. Respondent argues that this is a tragic matter, but that it's not compensable because no matter whom petitioner had been with or whether she had been with someone else, the act would have occurred. With that, I cannot agree.
>
> The assailant chose the respondent's place of business because it was the only place of contact where the petitioner and Brinker could be found, and but for that employment and contact, there would have not been any shooting. I find that it was a necessary factor leading to the incident, and but for the employment, there would have been no assault.

---

[1] Dee Rose notes that there was no evidence that Rosa knew petitioner had gone to dinner with Brinker on the two Wednesdays.

Accordingly, I find the within matter compensable and direct that the case proceed.

Petitioner testified on January 12, 1989. On May 5, 1989 the judge issued his reserved decision. In that decision, he amended some of his findings of fact made on April 22, 1988.[2] He referred to Rosa's treatment at the mental health center, noting that he had a scheduled appointment on March 19, 1987, and that he called the center after shooting Brinker and while holding petitioner hostage. The judge concluded:

I see no reason to change my original opinion in this matter. I am still of the opinion that but for the petitioner's working at Dee Rose Furniture, Inc. that there would have been no contact with the decedent Brinker and the petitioner, and whatever insane delusions the decedent Louis Rosa harbored, he did so because of the work relationship that petitioner had at Dee Rose Furniture.

He therefore ordered temporary disability benefits to be paid to petitioner and continue until further order of the court.

The narrow issue involved on this appeal is whether petitioner's injuries from the gunshot wounds "arose out of" her employment. *N.J.S.A.* 34:15-7. There was no question but that they occurred in the course of her employment. Our Supreme Court addressed this issue in *Coleman v. Cycle Transformer Corp.*, 105 *N.J.* 285, 520 *A.*2d 1341 (1986), where the court concluded that the "arising out of" portion refers to causal origin, and the "course of employment" portion to the time, place and circumstances of the accident in relation to the employment. *Id.* at 288, 520 *A.*2d 1341. The court found the question of whether the injury in that case arose out of petitioner's employment to be a substantial question, noting that "this simple-worded phrase has given rise to 'a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion.'" *Id.* at 290, 520 *A.*2d 1341 (quoting Note, "Arising 'Out

---

[2]For example, originally the judge had found that, when petitioner and Brinker went to dinner together on the two Wednesdays preceding the shooting, other sales people accompanied them. In the May 5, 1989 findings, he corrected that to find that only the two of them had dinner together on those occasions.

of' and 'in the Course of the Employment' Under the New Jersey Workmen's Compensation Act," 20 *Rutgers L.Rev.* 599 (1966)). In *Coleman,* petitioner had eaten her lunch, which she had brought from home, in a lunchroom set aside by her employer on its premises for that purpose. When she finished eating, petitioner went to light a cigarette and, as she described it,

> ... I struck the match and as I went to turn my head to the right to talk to one of my co-workers, you know, the tip of my hair caught the match and my hair went up in flames. [105 *N.J.* at 287, 520 *A.*2d 1341]

The judge of compensation denied her claim for facial and head burns, scarring and neuropsychiatric and dermatological disabilities, concluding that the event was not "reasonably incidental" to her employment. On appeal, we reversed, based upon *Chen v. Federated Dept. Stores,* 199 *N.J.Super.* 336, 489 *A.*2d 719 (App.Div.1985), which we found dispositive. However, the Supreme Court reversed our determination and reinstated the judgment of the Division of Workers' Compensation in favor of the respondent.

   ■ In the course of its opinion the Supreme Court noted that the "but for" or positional risk test is now a fixture in New Jersey law. *Coleman, supra,* 105 *N.J.* at 290, 520 *A.*2d 1341. That test asks, "whether it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere." *Howard v. Harwood's Restaurant Co.,* 25 *N.J.* 72, 83, 135 *A.*2d 161 (1957). Unless it is more probable that the injury would *not* have occurred under the normal circumstances of everyday life outside of the employment, the necessary causal connection has not been established. *Coleman, supra,* 105 *N.J.* at 290, 520 *A.*2d 1341. The *Coleman* court then found three categories of risks, the first of which it described as, "[t]hose risks that are 'distinctly associated' with the employment...." The second type "are those described as 'neutral' [which] ... have been defined as 'uncontrollable circumstances' and 'do not originate in the employment environment' but rather 'happen to befall the employee during

the course of his employment.'" 105 *N.J.* at 291, 520 *A.*2d 1341; *see also* 1 *Larson, Workers' Compensation Law,* § 6.50 (1990) (which states that neutral risks are "neither personal to the claimant nor distinctly associated with the employment."). As common examples of neutral risks, the court in *Howard* offers "acts of God, such as lightning." 25 *N.J.* at 84, 135 *A.*2d 161. The third category of risks are those which are personal to the employee. These are described as, "[r]isks falling within this classification do not bear a sufficient causative relationship to the employment to permit courts to say that they arise out of that employment." *Coleman, supra,* 105 *N.J.* at 292, 520 *A.*2d 1341. Quoting from *Howard, supra,* 25 *N.J.* at 85, 135 *A.*2d 161, the *Coleman* court said:

> ... [i]n these situations, the employment connection with the injury is minimal; it is the personal proclivities or contacts of the employee which gives rise to the harm, so that even though the injury takes place during the employment, compensation is denied. [105 *N.J.* at 292, 520 *A.*2d 1341]

In this case, the judge of compensation applied the "but for" test, concluding that in the deranged mind of Rosa he believed there was a romantic relationship between petitioner and Brinker, a co-worker, and thus more probably than not the only situs where he would assault both of them, as he did on March 19, was the place of employment. While this conclusion has great appeal, we do not believe that the risk of Rosa committing an attack on petitioner was limited to the job site so as to come within the category of a "neutral" risk. It is clear that, as to Brinker, this risk fell into that category, and accordingly dependency benefits were awarded for his death without dispute by respondent employer. However, the facts reveal that Rosa had continuously sought contact with petitioner, both by telephone and at her home. As noted, four days before this tragic incident occurred, he came to petitioner's home. When she heard noises from beneath her house, she called the police. When asked whether she saw Rosa on that occasion, petitioner answered,

> No. As a matter of fact, they came onto my property and he wasn't under my home, and as we were walking across the lawn, I said to them, I heard the

bushes and I said I believe he jumped over the wall because there was a wall there and with that, they didn't find him on my property, so they told me to go back into the house and they drove away.

I saw them come up the drive to the house next door. I watched them from my dining room window and I—all I saw was that they were there. And then they pulled away because it was—it's very dark back there. After they left, I called them to see what had happened and they said they had him. They found him under that house.

Thus, it is clear that Rosa was lurking around petitioner's home four days before this incident and had in his possession some form of knife. These circumstances belie the conclusion of the judge of compensation that the risk to petitioner from Rosa was limited to the work place because Brinker was there and Rosa perceived there was a romantic relationship between petitioner and Brinker.

This case is factually similar to *Transactron v. Workers' Compensation Appeals Board*, 68 *Cal.App.*3d 233, 137 *Cal. Rptr.* 142 (1977). In that case, Sharon Cornelius was working as a receptionist for Transactron. One morning shortly after arriving for work, she saw through a window that her former boyfriend was approaching. She then hid in the women's rest room. When the boyfriend arrived, he asked for Sharon and was told she was in the ladies' room. He entered the ladies' room and fatally shot her. At trial level an award of compensation was entered for dependency benefits on the ground that a coemployee directed the assailant to the ladies' room. This award was reversed on appeal when the court concluded that the shooting did not arise out of the employment. In support of its holding, the court said:

... Where the nature of the employee's duties places her in no particularly dangerous or isolated position, or where the risk of harm is not limited to the place of employment, and where the attack occurs on the premises not because the victim was performing the duties of employment at the time of assault but because she merely was there, and where the nature of employment was not part of an assailant's plan to isolate or trap the victim, the injury does not arise out of the employment. [137 *Cal.Rptr.* at 146]

*See also Gutierrez v. Artesia Public Schools*, 92 *N.M.* 112, 583 *P.*2d 476 (App.1978), where the court said:

> Apart from Louisiana, the rule is uniform that where an employee's death or resulting injuries is caused by willful or criminal assault of a third person intending to injure him because of reasons personal to the third person and not for any cause connected with the employee's employment, the injury does not arise out of the employment, and the resulting death or injuries is not compensable. [583 *P.*2d at 479]

Similarly in Colorado, where a co-worker shot two coemployees at work because he believed they were responsible for obscene telephone calls made to his wife, the court concluded that the shooting could have happened anywhere. *Velasquez v. Industrial Commission,* 41 *Colo.App.* 201, 581 *P.*2d 748 (Colo.Ct. App.1978). The court there said:

> '... [w]hen the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test.' [581 *P.*2d at 749 (quoting 1A *Larson, The Law of Workmen's Compensation,* § 11.21)]

A different result may have been reached in this case if, as part of her employment, petitioner was obliged to have dinner with Brinker or to accompany him to places outside of the place of employment where they could be observed by her deranged former boyfriend. Thus it could be said that the relationship was fostered as a result of the employment. However, in this case, petitioner's decision to have dinner with Brinker on his dinner breaks was in no way related to her job as a clerk in Dee Rose's store.

Reversed and remanded to the Division of Workers' Compensation for the entry of a judgment in favor of respondent.