621 A.2d 91

DONNA M. TOMS, PETITIONER–APPELLANT, v. DEE ROSE FURNITURE, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 9, 1993—Decided March 11, 1993.

Before Judges DREIER, SKILLMAN and VILLANUEVA.[1]

*Harold N. Hensel* argued the cause for petitioner-appellant (Rumpf & Hensel, attorneys; *Mr. Hensel,* on the brief).

*Francis T. Giuliano* argued the cause for respondent-respondent.

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Petitioner appeals from the dismissal of her claim for workers compensation dependency benefits based on the death of John Brinker.

Petitioner and the decedent began living together in 1975, when they were both in their early twenties, and maintained an exclusive romantic relationship for the next twelve years until decedent was shot and killed during the course of his employ-

---

[1] Although Judge Villanueva did not participate in oral argument, the parties consented to his participation in the decision.

ment by a mentally disturbed boyfriend of a coemployee.[2] Petitioner and decedent maintained joint bank and utility accounts and purchased a home as joint tenants with a right of survivorship. Although petitioner and decedent lived together as though they were husband and wife and planned to get married eventually, they were not married as of the date of decedent's tragic death.

The judge of compensation denied petitioner's claim because she was not decedent's "wife" within the intent of *N.J.S.A.* 34:15–13(f). The judge stated that although the courts have recognized that a "de facto" marital relationship may entitle a petitioner to dependency benefits, such claims have been sustained only when "... the surviving petitioner [had] entered into a ceremonial marriage unaware of any marital impediment on the part of the decedent employee." The judge concluded that the relationship between petitioner and decedent did not qualify as a "de facto" marriage under this case law because "[t]he parties did not enter into a ceremonial marriage and petitioner was aware of her single status." We affirm substantially for the reasons expressed by the judge of compensation.

To be entitled to dependency benefits under *N.J.S.A.* 34:15–13, a claimant must fit within one of the classes of beneficiaries enumerated in *N.J.S.A.* 34:15–13(f), which include a "wife." Petitioner acknowledges that she never married the decedent and thus was not legally recognized as his wife. However, petitioner contends, relying upon *Dawson v. Hatfield Wire & Cable Co.*, 59 *N.J.* 190, 280 *A.*2d 173 (1971) and *Parkinson v. J & S Tool Co.*, 64 *N.J.* 159, 313 *A.*2d 609 (1974), that she is entitled to benefits as a "de facto" wife.

---

[2] The same incident which resulted in decedent's death also was the subject of a prior decision of this court involving a compensation claim of the coemployee, who was injured by the assailant. *Marky v. Dee Rose Furniture Co.*, 241 *N.J.Super.* 207, 574 *A.*2d 546 (App.Div.), *certif. denied,* 122 *N.J.* 359, 585 *A.*2d 368 (1990).

In *Dawson*, the claimant and decedent were married ceremonially and lived together for sixteen years until the husband's death in a work-related accident. However, unbeknownst to the wife, her husband had never divorced his first wife. Consequently, their marriage was void. Nonetheless, the court found that the ceremonial marriage and petitioner's good faith reasonable belief that she was married qualified her as a "wife."

In *Parkinson*, the claimant and decedent were married ceremonially before a Catholic priest, but subsequently divorced. The parties reunited ten years later and asked a priest to remarry them. However, the priest said a marriage ceremony was unnecessary because the couple was "already married in the eyes of God." The couple accepted the priest's explanation, assumed they were married and resumed cohabitation. The husband was subsequently killed in a work-related accident. In holding that petitioner was entitled to compensation benefits, the Court emphasized that the parties had been ceremonially married, that their marriage had been reaffirmed before a priest, and that the only reason they did not have a second marriage ceremony was the mistaken advice given them by the priest. The Court contrasted these circumstances with an unlawful common law marriage:

> Solemnity, publicity, and deliberation distinguish a legitimate marriage ceremony from an illegitimate common law union. Inherent in the common law marriage are a non-recognition of the legal process, and a lack of commitment which often gives rise to an impermanent and ephemeral arrangement, such that economic support, let alone dependency, may be withheld randomly. The union, which in the eyes of the public remains an uncertainty, may dissolve at any time. Such a couple may not both use an identical surname, file joint tax returns, or be deemed an entity for census-taking, welfare or social security eligibility. Oftentimes while they both may reside at one address, only one name may appear, and the other party may have legal residence elsewhere.... The Legislature and this Court have both declared that common law marriages are prohibited.

[64 *N.J.* at 163, 313 *A.*2d 609.]

Notwithstanding the closeness and longevity of the relationship between petitioner and decedent, they were not married

and therefore petitioner was not the decedent's wife. Rather, the parties' relationship was a common law marriage which is not recognized under New Jersey law and which the Court in *Parkinson* said was excluded from the dependency benefit provisions of the Workers' Compensation Act. Since petitioner's relationship with decedent did not fit within any of the categories enumerated in *N.J.S.A.* 34:15–13(f), she did not qualify for dependency benefits. *Cf. Miles v. Theobald Ind.*, 144 *N.J.Super.* 535, 366 *A.*2d 710 (App.Div.1976) (a person who stands "in loco parentis" to a decedent is not a "parent" within the intent of *N.J.S.A.* 34:15–13(f)), *certif. denied*, 73 *N.J.* 51, 372 *A.*2d 316 (1977).

This case is fundamentally different from *Dunphy v. Gregor*, 261 *N.J.Super.* 110, 617 *A.*2d 1248 (App.Div.1992), which involved the scope of the common law tort action for negligent infliction of emotional distress recognized by *Portee v. Jaffee*, 84 *N.J.* 88, 417 *A.*2d 521 (1980), if a person suffers severe emotional distress from observing the death or serious injury of a family member caused by another party's negligence. In that context, we held that parties who were engaged and living together had an "intimate, familial relationship" which could form the basis for a *Portee* cause of action. In contrast, petitioner's claim is based upon a statute which limits benefits to a person who qualifies as a "wife." Petitioner did not occupy that status in relation to the decedent.

Affirmed.