JOHN M. BOLLINGER, PROSECUTOR-APPELLANT, v. WAGA-
RAW BUILDING SUPPLY CO., RESPONDENT-APPEL-
LEE.

Argued February 9, 1939—Decided May 23, 1939.

For the prosecutor-appellant, *Isadore Rabinowitz* and *Nathan Rabinowitz* (*Isadore Rabinowitz,* of counsel).

For the respondent-appellee, *Kalisch & Kalisch* (*Isidor Kalisch,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This is an appeal from a Supreme Court judgment in a compensation case. Prior to the consideration of the case by the Supreme Court on *certiorari,* the petition for compensation had been dismissed in the bureau and such dismissal affirmed in the Bergen County Court of Common Pleas. The Supreme Court concluded that the dismissal of the petition was proper and affirmed the judgment of the Pleas.

The facts of the case are these: Petitioner, John M. Bollinger, since deceased, was employed by the respondent in operating a machine which turned out building blocks made of ashes, sand and cement. In the performance of this work a certain quantity of the sand and ashes inevitably found its way into the shoes of the workmen thus employed and into the pockets of their garments. It appears that the petitioner had a pigmented mole on his left foot, about a half inch in diameter, located on the outer aspect of his instep, just above the little toe. He testified that on the afternoon of July 15th, 1936, he felt a severe pain in his left foot where the mole was located; that it bothered him "real bad" and that after quitting work and when he was removing his socks, preparatory to taking a shower bath, the stocking was stuck to the mole and was stained with blood. Upon examination "it just looked like a little scratch, a little spot" and, further, · "* * * like the ashes irritated it a little bit." Later that evening, when he went home, his wife applied a home remedy, "a Red Cross sticker" to the affected part. This condition during the weeks that followed did not bother him sufficiently to cause him to "lose work" but about four weeks later the mole started "to ooze" and, upon the advice of his physician, he went to the Paterson General Hospital. The mole was then found to have developed into a malignant cancer (melanoma) and it was surgically removed. He remained in the hospital for three days. Six weeks later—during the interval he walked on crutches—another operation was performed upon the foot and leg as far as the groin. This operation was necessary because of objective evidence that the disease had spread. This time he remained in the hospital thirty-eight

days. In January, 1937, he returned to work and was assigned to a light task "around the yard." These facts, concerning the injury, had corroboration in the testimony of Mrs. Bollinger and Howard Dinger, a fellow employe. Petitioner's case was determined in the bureau on July 22d, 1937. The review in the Pleas was disposed of July 15th, 1938. The petitioner died June 3d, 1938.

The referee in the bureau found that the condition complained of was "purely occupational and not the result of an accident arising out of and in the course of employment." Obviously the referee concluded that petitioner suffered an occupational disease. We cannot agree that it was such disease. An occupational disease is one that from common experience is visited upon persons engaged in a particular occupation, in the usual course of events. It is one that is incidental to the employment itself, *e. g.,* painters become affected with lead colic or lead poisoning; telephone operators develop ear trouble; phosphorous poisoning is common to those who work in the manufacture of fireworks. These examples might be multiplied. In such instances they are injuries or diseases common to workers in those particular trades and, manifestly, do not usually arise by accident as the term "accident" is commonly understood. Such diseases are not compensable unless made so by statute. *R. S.* 34:15-31.

We now turn to the judgment of the Pleas. The learned judge gave final judgment to the employer and by his order found that petitioner failed to establish "any compensable accident * * *." Accident alone was not the subject of the inquiry. The statute provides that compensation shall be awarded for *personal injury* by accident. *R. S.* 34:15-7.

Now in his opinion the judge stated that the petitioner had worked on this cement block machine for fourteen or fifteen months; that the cancer "was caused by sand *constantly* irritating the mole over a considerable period of time." The evidence in the record does not support these statements. Petitioner was employed only five months during 1935, and four months during 1936, and he began work on the machine, *out of which operation the injury had its origin,* only in June, 1936.

It is quite understandable, however, that this impression was entertained by the Common Pleas judge because when the petitioner was asked on direct examination when he *first obtained* employment with the respondent, he answered, "April, 1935," but it later appears in the respondent's case, in the testimony of Dr. Wassing, who, when asked what history had been given him by the petitioner, referred to his notes and said that the petitioner had worked for the respondent from May until October, 1935, and again from April until August, 1936, but the important point is that from the testimony of this same witness it indisputably appears that Bollinger started work on the machine for making cement blocks in June, 1936, so that instead of constant employment on this machine for fourteen or fifteen months, as the Common Pleas Court found, it appears as a fact that he worked at it for not much longer than one month at most.

Again, in the opinion of the Pleas, it is said, "It is just as probable that the region of the mole had commenced to swell by reason of sand irritating the mole on previous days and that the pain felt on July 15th, was only a symptom of a pre-existing condition, as it is that the sand coming into contact with the mole on that day caused the condition complained of." We find no evidence in the case to justify that deduction. The testimony of Bollinger admits of no legitimate inference except that on July 15th, for the first time, he experienced a pain in his foot and discovered at quitting time that the mole had bled; and the cross-examination of the petitioner carries the clear fact statement that while he would have cause to take off his shoes on occasions to remove the sand, that at such times it was because, and only because, the sand had collected underneath the sole of his foot and thus made walking uncomfortable. There was no evidence that the mole had been irritated. It is further said in the opinion of the Pleas that "there is no evidence that the sand coming into contact with the mole on July 15th, was the cause of the melanoma." On the contrary, we find plenary medical evidence of that fact. It is a fair statement that the medical experts on both sides were agreed in the view that irritation of a pigmented mole would convert it into a cancer.

There was no testimony whatever that there had been any irritation of the affected part prior to July 15th, the date upon which Bollinger said he felt "smarting, stinging" pain, which was later followed by bleeding from the affected part. The Pleas also found that the happening of July 15th, "was caused by a swelling of the foot pressing against the shoe causing the sand in the shoe to break the skin and that this swelling is evidence of pre-existence of a melanoma." As to this, there is no evidence whatever upon which such a conclusion may be justified. The medical testimony most persuasively points the other way and to the effect that a cancer of this type, as such, developing from a mole, will not bleed as this did on July 15th, but that a serum will ooze from the affected area. There emerges from this the legitimate deduction that when the mole bled it was not yet in fact a cancer but that when later it began "to ooze" cancer had developed.

We turn to the final judgment which is under review. The Supreme Court affirmed the Pleas and in its opinion said that "this condition [the injury] was caused by the constant irritation of the mole by the sand and ashes with which it came into contact; that it was not of accidental origin within the meaning of the statute but rather should be classed as an occupational disease, * * *. The testimony does not establish any *accidental injury at any time* but does abundantly establish that the condition of the foot was the result of long continued and daily irritation of the mole by the sand and ashes." (Italics supplied.)

It is the duty of the Supreme Court to find the facts in a proceeding of this kind (*R. S.* 2:81-8; 34:15-66), but, apart from that, the court has the power to do so independently. *Lighthipe* v. *Orange*, 75 *N. J. L.* 365. This court will invariably affirm the judgment of the Supreme Court as to a fact conclusion if the fact finding is sustained by any evidence, but it is our duty to reverse any material fact conclusion if it rests on premises that are erroneous.

Now in this matter we perceive no evidence at all, as was said before, that there was "constant irritation of the mole" prior to July 15th, 1936, nor can we agree that the testimony

did not establish *"accidental injury at any time"* for two reasons—first, the testimony established by objective and subjective evidence that the claimant suffered injury on July 15th, *e. g.,* pain, then limping, bleeding of the mole, and the scratch that appeared on the particular spot; second, the presence of sand and ashes around the mole when the injury occurred on July 15th. The impinging of this sand and ashes on the mole constituted the application of traumatic force, if in this case that element be necessary to make out injury by accident under our statute. All the medical witnesses agree that the impinging of the sand, &c., amounts to traumatic force. Obviously injury was suffered. Whether it was accident within the meaning of the statute will have consideration later. It may well be that there was continued irritation of the mole from *July 15th,* the date when the workman was first injured, and the time in August, when he consulted a physician, but that of course does not make it any less a compensable injury. If, for example, particles of sand or grit had at a given time struck the eye of a workman and lacerated the cornea, no one would contend that it was not accidental injury even though previously it had been a matter of daily occurrence that grit had gotten into the eye and had done no damage other than collect around the edge of the lid. We fail to perceive any defensible distinction in principle between this suppositious case and the one before us.

In order that injury or death may be compensable our statute requires that such injury or death arise by accident out of and in the course of the employment. These features of the statute have been too often considered to require any discussion now. *Bryant* v. *Fissell,* 84 *N. J. L.* 72; *Liondale* v. *Riker,* 85 *Id.* 426. Here admittedly the injury arose out of and in the course of the employment. The debated question is: Was there accidental injury? It should be borne in mind that it is not necessary that an accidental injury, in order to be compensable, be the result of traumatic force. *George* v. *Waldron,* 111 *Id.* 4 (sun-stroke); *Bernstein Furniture Co.* v. *Kelly,* 114 *Id.* 500; *affirmed,* 115 *Id.* 500 (heart

failure); *Richter* v. *DuPont, &c.,* 118 *Id.* 404; *affirmed,* 119 *Id.* 427 (pneumonia). And the fact that the injury was accidental may legitimately be inferred from circumstantial evidence. *DeFazio* v. *Goldschmidt, &c.,* 87 *Id.* 317. Nor it is requisite where a workman suffers two injuries, months apart, to prove which of them did the mischief. *Cunliffe* v. *Deslauriers, &c.,* 5 *N. J. Mis. R.* 1038; compare *Carlton* v. *Celluloid Co.,* 8 *Id.* 801.

Injury by accident is the language of the statute which must be construed and broadly delineated. Considering the words themselves in their context, it is obvious that they exclude injury by disease *only* as well as injury by design on the part of the petitioner. We have long held the view that an accident is "an unlooked for or untoward event which was not expected or designed," or "an unintended or unexpected occurrence which produces hurt or loss." *Bryant* v. *Fissell, supra; Ismay* v. *Williamson* (1908), *A. C. (Eng.)* 437, L. J. P. C. N., and it is clear that the term "accident" is used and therefore should be considered in its ordinary, popular and accepted sense and that it need not be due to any extraneous event or occurrence. That this is so is manifest from the judgment and opinions of this court, holding, for instance, that sunstroke, although a resultant injury, is a compensable, accidental injury. *Kauffeld* v. *Pfund,* 97 *N. J. L.* 335; *George* v. *Waldron, supra;* likewise heart failure and pneumonia. *Bernstein* v. *Kelly, supra; Richter* v. *DuPont, supra;* courts in other jurisdictions are in accord; see *Schneider's Compensation Law* (2d ed.), § 333.

The English Workmen's Compensation act is identical with our own in respect to the wording of this fundamental provision concerning accidental injury. The construction given by the court of last resort of that jurisdiction to this statute is helpful, and our legislature, we may assume, had such construction in mind when this law was first enacted in 1911. The English House of Lords held that compensation was payable to a workman who suffered an infection with anthrax which resulted from the handling of wool, *Cf. Brintons* v. *Turvey, A. C.* 230; allowed compensation to a workman who

died from a serious aneurism while tightening a nut with a "spanner," holding that this was personal injury by accident, *Cf. Clover, Clayton & Co.* v. *Hughes* (1910), *A. C.* 242; 3 *B. W. C. C.* 275. The court said in that case that compensation should be allowed even though the injury is due "to the *presence* of a *special condition* in the employe's body." Compensation was allowed in the case of heat stroke. *Ismay, &c.,* v. *Williamson, supra.* Indeed the English court of last resort has held that there need not be proof of a distinct event or occurrence to make out a compensable case. *Fenton* v. *Thorley & Co., A. C.* 443; compare *Falmouth Docks and Engineering Co.* v. *Treloar* (1933), *A. C.* 481; 26 *B. W. C. C.* 214, and *Partridge Jones, &c.,* v. *James* (1933), *A. C.* 501; 26 *B. W. C. C.* 277; *Collinson* v. *Manvers Main Colleries, Ltd.* (1937), 30 *B. W. C. C.* 280. In the last case the English Court of Appeal awarded compensation to a workman in a coal mine who suffered an infection on his hand from a blister that resulted from his use of a hammer and pick. Many other cases decided in that jurisdiction by the court of last resort might be supplied. They may be found in Butterworth's compilation of compensation cases and they serve to illustrate "how little is necessary nowadays to satisfy the requirements of an 'accident.'" *Walker* v. *Bairds & Dalmellington, Ltd.* (1935), 28 *B. W. C. C.* 213. But, be that as it may, we think that the requirement that the injury or death arise by accident, under our statute, is satisfied if the claimant discharges the burden of proving that the condition complained of, *i. e.,* the injury or death, is related to or affected by the employment, that is to say, if but for the employment it would not have occurred. The exception to this principle is the case of occupational disease with which our statute deals as a separate matter. *R. S.* 34:15-30 to 15-35. Hence where a workman suffers injury or dies because of a previous physical condition, it must appear that the mishap or fatality is related to or caused by the employment, and that it arose out of and in the course thereof. Death from disease alone *during* the employment will not suffice, but injury or death which on proofs that are sufficient

and persuasive, would not have occurred but for the services rendered in the employment, amount to injury by accident.

Reverting to the testimony in this case, there is no claim on the part of the employer that cancer was present in the case of the workman or that it would have resulted in any event apart from his employment. There is an undenied causal nexus between the injury of July 15th and the fatal result. There is no dispute whatever about the chain of causation; no proof that the mole was ever irritated before the date in question; plenary medical proof that the impinging of the sand on the mole was the producing cause of the cancer. We observe parenthetically that the main reason for the erroneous conclusion of the tribunals below was in part due to the fact that the cross-examination of the medical experts, without exception, was predicated on premises contrary to the facts stated by the petitioner and his lay witnesses, and this without objection on the part of petitioner's counsel. For instance, the hypothetical questions were premised on the fact that there had been constant irritation of the affected part prior to the date on which the injury became manifest. Such testimony, as has been said, we do not find in the record. On the other hand, there was ample testimony of an unexpected occurrence resulting in injury on July 15th, sufficient to satisfy the requirement of accidental injury; there was plenary evidence that the irritation, started that day, caused the melanomic change. That the Workmen's Compensation act should be construed liberally is too well settled by our own adjudications to require the citation of any authority. The legislation is remedial and beneficent in its scope and intention. Under the statute, *supra*, a workman who does not, by agreement with the employer, accept the provisions of article 2 of the statute (Elective Compensation, 34:15-7) is none the less relieved of the rigor of the common law rule concerning master and servant, in the event of his injury or death by accident arising out of and in the course of his employment. 34:15-1 and 15-2. And it was the further intention of the legislature to compel industry to pay compensation to offset the economic loss visited on the workman and his family

by reason of his injury or death by accident arising out of and in the course of his employment.

These views present some of the broad lineaments of the problem of what constitutes injury by accident. The problem is one that presents the chief difficulty in the bureau.

The judgment of the Supreme Court proceeded on the erroneous view that the employe's condition took the classification of an "occupational disease" rather than an accidental injury related to the employment; and the cause will therefore be remanded to the Supreme Court for findings in accordance with the principles herein laid down.

The respondent makes a further point that the petition having been dismissed and the original petitioner having died, there remains nothing to be reviewed and that the appeal should be dismissed. This presents no great difficulty. The widow and dependents should receive, dependent upon a favorable finding for the petitioner, an amount representing temporary and permanent disability up to the time of the petitioner's death plus the customary expenses. The technical matter may be remedied in the Supreme Court in accordance with the practice.

Judgment reversed, costs to abide the event.

*For affirmance*—PARKER, WELLS, JJ.  2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WOLFSKEIL, RAFFERTY, JJ.  9.