272 N.J. Super. 118 (1994)
639 A.2d 378
LINDA VERGE, PETITIONER-APPELLANT,
v.
COUNTY OF MORRIS, RESPONDENT-APPELLEE.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1994.
Decided April 5, 1994.
*120 Before Judges SHEBELL, LONG and LANDAU.
Ronald W. Bronstein argued the cause for petitioner-appellant (Nusbaum, Stein, Goldstein & Bronstein, attorneys; Robert Stefani, on the brief).
Michael Hubner argued the cause for respondent-appellee (Johnson, Murphy, Hubner, McKeon & Wubbenhorst, attorneys; Irma W. Francis, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Linda Verge (petitioner) appeals from the dismissal of her claim petition for workers' compensation benefits. The claim was held to be non-compensable on the grounds that her accident was an "idiopathic event." We reverse and remand.
On January 13, 1993, petitioner filed claim petition, number XX-XXXXXX, alleging that she "twisted her left knee walking in court house" and suffered a "[p]ermanent orthopedic injury to left leg." On or about February 8, 1993, respondent, County of Morris, filed an answer denying that injury arose in course of employment. Petitioner filed a motion, dated March 16, 1993, for temporary disability and medical benefits, to include arthroscopic surgery on her knee.
A hearing on the motion was held on April 30, 1993. At the conclusion of petitioner's testimony, the judge of compensation refused to hear any further testimony or to permit petitioner's counsel to be heard as to legal argument. The judge immediately rendered the following decision:
This is a Motion for Temporary Disability and Medical Treatment brought by Linda Verge, an employee of Morris County, as a result of an injury to her left knee suffered on December 15, 1992, when as a court clerk in the employ of Morris County, she was walking in the lobby of the courthouse and slipped on the rug injuring her left knee.
She testified that she did not fall to the floor. There was no contact between her knee and the floor or any other object.

*121 She received relatively immediate medical attention at the Morristown Memorial Hospital.
The record of the emergency room has been placed in evidence as Exhibit P-1. It gives a description of the accident as follows: "Twisted left knee while walking in lobby of courthouse."
The symptoms were pain in the left knee.
Petitioner additionally testified that she had a long history of prior injury to her left knee beginning in childhood and it included surgery to her left knee joint in 1985 involving cartilaginous damage to her left knee.
She disclaims any problems with the left knee between that period of time and the incident in December of '92, when she was walking in the lobby of the courthouse.
Petitioner indicates that presently she's in need of further surgery to her knee and requests the Court to authorize same based upon an alleged accident arising out of and in the course of employment on December 15, 1992.
The issue is whether under the circumstances described by the petitioner  and I accept every word of her testimony as being true  whether her employment was a contributing cause to her injury; was the event reasonably incident to her employment.
I am constrained to find otherwise.
Petitioner describes an idiopathic event and not one that can be found to be an incident of the employment. It was an event which could have occurred anywhere at any time. It was an event that which took place in normal walking.
Under the circumstances her claim is dismissed.
According to her testimony, petitioner, a twenty-five-year-old woman, was employed as a court clerk by Morris County and was working on December 15, 1992. She had worked for Morris County for approximately one and one-half months before her accident. Petitioner's testimony concerning her accident and injury was as follows:
Q. What  did something happen to you at the Morris County Courthouse that day? Did something happen while, while you were there?
A. Yes.
Q. Tell the Court exactly what happened.
A. In the lobby I slipped on a rug.
Q. You were in the lobby of the Courthouse.
A. Yes.
Q. And you, and when you say you slipped on a rug, can you 
THE JUDGE: You don't have to repeat what she says. It's in the record.
Q. I was going to ask you if you can be more specific. What, what slipped, what foot slipped?

*122 A. My left foot slipped on a rug.
Q. And when that happened? Did you feel anything?
A. Yes, a stabbing pain in my left knee.
After she slipped, petitioner "hobbled" into the Sheriff's Office. Present were approximately five persons, including petitioner's husband who was an employee of the Sheriff's Office. The people in the office "sat [petitioner] down" and she explained to her husband what had happened. When petitioner's counsel sought to present the testimony of petitioner's husband at trial, the judge stated: "It's not relevant. I don't think we need any corroboration of the petitioner's testimony. * * * [i]t's not compensable. You can stop at this point and I'll explain why."
About an hour later, petitioner was taken to Morristown Memorial Hospital. The hospital record stated that petitioner "[t]wisted left knee while walking in lobby of courthouse." She was sent to the County's doctor, who recommended that she see an orthopedic specialist, who sent petitioner for therapy. Petitioner received therapy to her knee from about December 20, 1992, to the beginning of April 1993. Petitioner was also treated by another orthopedic physician, who prescribed a knee brace. Both orthopedists recommended arthroscopic surgery. Petitioner testified that she did not undergo the surgery because of "lack of funds." Since her accident of December 15, 1992, petitioner has not returned to work for the county. By letter dated February 4, 1993, petitioner was notified by the court administrator of Morris County that her employment was terminated because of her inability to work.
Petitioner testified that she first had problems with her left knee in the early 1970's, attributable to growing problems. She had knee surgery in 1978, at age ten, when she was in the fourth grade. Ultimately, she had a total of three surgeries on her left knee, with the last surgery taking place in 1985. Petitioner asserted that she had no problems with her knee since her last surgery, and that she required no further treatments until this incident. She testified that after 1985, the knee was fine and she was able to perform all her work duties when she entered the job *123 force. Prior to the present injury, petitioner enjoyed figure skating and playing tennis and basketball, and had no knee problems when she performed these activities.
The judge of compensation correctly stated that the issue was "whether [petitioner's] employment was a contributing cause to her injury" and whether the "event [was] reasonably incident to her employment." He stated that he accepted every word petitioner said as true, but nonetheless he found that her "slip" was an "idiopathic event" and not one that could be found "to be an incident of the employment." He reasoned that "[i]t was an event which could have occurred anywhere at any time" and that "[i]t was an event that which took place in normal walking." In dismissing petitioner's claim, the judge pointed out that there had been no contact between petitioner's knee and the floor and that petitioner had a long history of prior injury to her left knee.
On appeal, petitioner asserts that the judge of compensation erred in characterizing her "fall" as an idiopathic event. Petitioner argues that the slip on the courthouse rug represents a "neutral" risk incident to the employment and this satisfies the "arising out of" portion of the Workers' Compensation Act. See N.J.S.A. 34:15-7.
When this court reviews a decision regarding a claim for workers' compensation benefits, we decide only whether the findings of fact made by the judge of compensation could reasonably have been reached on "sufficient credible evidence present in the record," considering the proofs as a whole. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965). However, if there has been a mistaken application of the law to the facts, we must grant appropriate relief.
The New Jersey's Workers' Compensation Act (Act) provides in relevant part that:
[w]hen employer and employee shall by agreement, either express or implied, as hereinafter provided, accept the provisions of this article compensation for personal injuries to, or for the death of, such employee by accident arising out of and in the *124 course of employment shall be made by the employer without regard to the negligence of the employer. .. .
[N.J.S.A. 34:15-7 (emphasis added).]
The statutory requirement that a compensable accident arise out of the employment "looks to a causal connection between the employment and the injury." Coleman v. Cycle Transformer Corp., 105 N.J. 285, 290, 520 A.2d 1341 (1986).
We held in Giambattista v. Thomas A. Edison, 32 N.J. Super. 103, 115, 107 A.2d 801 (App.Div. 1954), that it is sufficient if the employment is "a contributing, though not the sole cause of the accident or injury...." An "idiopathic fall" is one which is caused by "a purely personal condition having no work connection whatever...." George v. Great Eastern Food Products, Inc., 44 N.J. 44, 45, 207 A.2d 161 (1965). To bar recovery, the record must substantiate a finding that the event was caused solely by disease or infirmity peculiar to the individual and not a condition of the employment. Spindler v. Universal Chain Corp., 11 N.J. 34, 39, 93 A.2d 171 (1952). Common examples of "idiopathic falls" are falls brought on by heart attacks or epileptic seizures. Coleman Cycle Transformer Corp., 105 N.J. 285, 292, 520 A.2d 1341 (1986) (citing George, supra, 44 N.J. at 44, 207 A.2d 161; Henderson v. Celanese Corp., 16 N.J. 208, 108 A.2d 267 (1954); Reynolds v. Passaic Valley Sewerage Comm'rs, 130 N.J.L. 437, 33 A.2d 595 (Sup.Ct. 1943), aff'd o.b., 131 N.J.L. 327, 36 A.2d 429 (E. & A. 1944)).
Our Supreme Court's enunciation of the law in Spindler, supra, over forty years ago, remains particularly apt and instructive in this case:
The Workmen's Compensation Act is remedial in nature and is given liberal construction to accomplish the desired legislative ends. Sampson v. Thornton, 8 N.J. 415 [86 A.2d 117] (1952).
"Injury by accident is the language of the statute which must be construed and broadly delineated. Considering the words themselves in their context, it is obvious that they exclude injury by disease only as well as injury by design on the part of the petitioner. We have long held the view that an accident is `an unlooked for mishap or untoward event which is not expected or designed,' or `an *125 unintended or unexpected occurrence which produces hurt or loss.' Bryant v. Fissell, [84 N.J.L. 72, 86 A. 458 (1913)] supra; Ismay v. Williamson, (1908), A.C. Eng.) 437, L.J.P.C.N., and it is clear that the term `accident' is used and therefore should be considered in its ordinary, popular and accepted sense and that it need not be due to any extraneous event or occurrence." Bollinger v. Wagaraw Bldg. Supply Co., 122 N.J.L. 512 [6 A.2d 396] (E. & A. 1939).
Where it is claimed the accident was the result of the physical condition of the employee, "the burden of proof is on the employer to show such cause." Atchison v. Colgate & Co., 3 N.J. Misc. 451 [128 A. 598] (Sup.Ct. 1925), affirmed 102 N.J.L. 425 [131 A. 921] (E. & A. 1925).
An injury suffered during the course of work does not per se entitle one to the benefits of the Workmen's Compensation Act; it must also appear that the injury arose out of the employment. Seiken v. Todd Dry Dock, Inc., 2 N.J. 469 [67 A.2d 131] (1949). The burden of proof, however, may be sustained by circumstantial evidence; direct evidence is not necessary. "Probability, and not the ultimate degree of certainty is the test." Jochim v. Montrose Chemical Co., 3 N.J. 5 [68 A.2d 628] (1949). See Ames v. Sheffield Farms Co., 1 N.J. 11 [61 A.2d 502] (1948). A risk is "incidental to employment" when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. Beh v. Breeze Corp., 2 N.J. 279 [66 A.2d 156] (1949).
"If the employment is a contributing cause to the accident, the statutory requirement is met * * *. The employment need not be the sole or proximate cause of the injury; it is sufficient if it is a necessary factor leading to the accident." Sanders v. Jarka Corp., 1 N.J. 36 [61 A.2d 641] (1948).
Here the fall resulting in the injury is not disputed. The difference of opinion centers in the cause.
If it was occasioned by or was the result of a disease or physical seizure and was not contributed to by "what the workman had to do," it is not compensable. On the other hand, if the fall "would not have occurred but for the services rendered" in the employment, it is covered by the statute.
[Spindler, supra, 11 N.J. at 38-39, 93 A.2d 171.]
The court went on to note with regard to the condition of the employee that:
The physical perfection of an employee is not a statutory prerequisite to qualification under the Workmen's Compensation Act. Marshall v. C.F. Mueller Co., 135 N.J.L. 75 [50 A.2d 158] (Sup.Ct. 1946); Bernstein Furniture Co. v. Kelly, 114 N.J.L. 500 [177 A. 554] (Sup.Ct. 1935); affirmed 105 N.J.L. 500 [180 A. 832] (E. & A. 1935).
[Spindler, supra, 11 N.J. at 39-40, 93 A.2d 171.]
New Jersey adheres to the proposition that the employer takes the employee as the employer finds the employee, with all of the pre-existing disease and infirmity that may exist. Kelly v. Alarmtec, *126 Inc., 160 N.J. Super. 208, 212, 389 A.2d 498 (App.Div.), certif. denied, 78 N.J. 340, 395 A.2d 209 (1978). Therefore, the employee is not disqualified under the requirement that the injury arise out of the employment where the pre-existing condition is aggravated, accelerated or combined with the pre-existing disease or infirmity to produce the disability for which compensation is sought. Giambattista, supra, 32 N.J. Super. at 114, 107 A.2d 801. In Giambattista:
The rule has long been established that, in cases of injury from accident arising out of and in the course of the employment, the employer takes the employee as he finds him with his existing disabilities and weaknesses, and that the workman is entitled to compensation for all of the consequences flowing freely and naturally from his accidental injury, irrespective of the fact that such consequences may be much more severe by reason of his pre-existing condition or defect.
[Ibid.]
Howard v. Harwood's Restaurant Co., 25 N.J. 72, 135 A.2d 161 (1957), recognized three categories of risk used in determining the connection between employment and injury. The first category is known as the "but for" test and this test asks "whether it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere." Id. at 83, 135 A.2d 161. Howard adds that the "but for" test connotes a standard of reasonable probability and includes in its application the nature of the risk that causes the injury to the employee. Id. at 83-84, 135 A.2d 161. Howard provides some examples of risks that are distinctly associated with employment and are clearly compensable when they occur at the place of and during the hours of employment:
[a]ll the things that can go wrong around a modern factory, mill, mine, transportation system or construction project  machinery breaking, objects falling, explosives exploding, tractors tipping, fingers getting caught in gears, excavations caving in and so on  are clearly in this category and constitute the bulk of what not only the public but perhaps also the original draftsmen of compensation acts had in mind as their concern.
[Id. at 84, 135 A.2d 161 (quoting 1 Arthur Larson, Workmen's Compensation § 7.10, at 3-12 (1990)).]
*127 A second category of risks causing injury which are said to "arise out of the employment" are those which are described as "neutral." Howard, supra, 25 N.J. at 84, 135 A.2d 161. "Neutral risks may be defined as uncontrollable circumstances which do not originate in the employment environment but which happen to befall the employee during the course of his employment." Ibid. An example of this type of risk is an act of God, such as lightning. Ibid. Other illustrations of this second category of risk are provided in Coleman, supra:
"[i]llustrations of [neutral risk] may be drawn from a wide variety of controversial cases. A man hard at work in the middle of a factory yard may be hit by a stray bullet out of nowhere, bit by a mad dog, stabbed by a lunatic running amuck, struck by lightning, thrown down by a hurricane, killed by an enemy bomb, injured by a piece of tin blown from someone's roof, shot by a child playing with an air rifle, murdered as a result of mistaken identity, felled by debris from a distant explosion, or blinded by a flying beetle."
[105 N.J. at 291 n. 1, 520 A.2d 1341 (quoting Larson, supra, at § 7.30).]
The third category of risks do not bear a sufficient causative relationship to the employment and, therefore, cannot be said to "arise out of the employment." Howard, supra, 25 N.J. at 84, 135 A.2d 161. These risks are those personal to the claimant. Ibid. And, those personal to the claimant are considered to be "idiopathic." George, supra, 44 N.J. at 45, 207 A.2d 161. Risks that are personal to the claimant are defined in Larson:
If the time has come for the employee to die a natural death, or to expire from the effects of some disease or internal weakness of which he would as promptly have expired whether he had been working or not, the fact that his demise takes place in an employment setting rather than at home does not, of course, make the death compensable. Or if the employee has a mortal personal enemy who has sworn to seek him out wherever he may be, and if this enemy happens to find and murder the employee while the latter is at work, the employment cannot be said to have had any causal relation to his death.
[Larson, supra, at § 7.20.]
The judge of compensation found that petitioner's "slip" was an event that "could have occurred anywhere at any time." He, therefore, concluded that it was an "idiopathic event" and found that the "slip" was not an incident of the employment. Here, the judge erred in precipitously declaring, on an inadequate *128 record, that petitioner's slip was an "idiopathic event" that could not warrant compensation under the Act.
We hold that if petitioner's "slip" is to be characterized as an "idiopathic event," it must be found to be one which was caused by "a purely personal condition having no work connection whatever." George, supra, 44 N.J. at 45, 207 A.2d 161. Petitioner testified that she slipped on a rug in the courthouse lobby while at work. Unless it is proven that this was not the cause of her injury, she must be compensated. Petitioner need not show that the rug was defective or that she was free from fault. Respondent, however, cannot be denied the opportunity to prove by direct or circumstantial evidence that petitioner did not accidently slip, but rather that her knee condition caused the event and, therefore, her injury was caused solely because of her pre-existing or personal infirmity or condition. This is an issue which the judge could not resolve on the limited proofs permitted.
If petitioner's "slip" in the courthouse lobby occurred as she described it in her testimony, and if it were a case of her knee twisting or giving-out for reasons personal to her, it would not constitute either an "idiopathic event" or a neutral risk. It would be directly associated with her employment as she slipped on a rug at a place where her job carried her. Petitioner's work duties required that she move throughout the courthouse, to courtrooms, conference rooms, and offices. It is not revealed in the record exactly what work duty petitioner was performing at the time of her "slip." However, respondent does not argue that petitioner was not performing her job duties while in the courthouse lobby where walking on the rug allegedly caused her to slip and twist her knee.
The burden of proof to establish an idiopathic cause is placed on the employer. Spindler, supra, 11 N.J. at 38, 93 A.2d 171. Here, the employer was precluded from attempting to establish an idiopathic cause. On direct examination, petitioner discussed prior problems and surgeries that involved her left knee. However, she further testified that after her last surgery in 1985, *129 she had no problems with her knee. The judge must afford the parties an opportunity to produce all evidence bearing on the issue of whether petitioner twisted her knee because she slipped on the rug while at work or whether her knee twisted or gave-out due to an idiopathic or personal cause. If petitioner sustained an idiopathic injury because there was no slip to cause her knee to twist in the first instance, then she cannot recover, as there was no subsequent fall or impact capable of causing a secondary injury.
We reverse the dismissal of petitioner's claim petition. We remand to the Division of Worker's Compensation for further proceedings.