**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3938-17T3

JAMES QUILES,

     Petitioner-Respondent,

v.

COUNTY OF WARREN,

     Respondent-Appellant.

_____

> Argued January 24, 2019 – Decided February 13, 2019
>
> Before Judges Koblitz, Ostrer, and Mayer.
>
> On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2014-10452.
>
> Kathleen A. Hart argued the cause for appellant (Morgan, Melhuish, Abrutyn, attorneys; Kathleen A. Hart, on the briefs).
>
> Victor B. Matthews argued the cause for respondent.

PER CURIAM

Respondent County of Warren (County) appeals from two decisions by the New Jersey Division of Workers' Compensation (Division) in favor of petitioner James Quiles (petitioner or Quiles): an October 20, 2015 order granting medical treatment and temporary disability benefits and a March 20, 2018 order awarding compensation benefits and attorney's fees. Because the decisions rendered by the Workers' Compensation judge were supported by substantial credible evidence and consistent with applicable law, we affirm.

Quiles was employed by the County as a corrections officer. On March 14, 2014, Quiles was climbing stairs at the County corrections facility to perform an inmate count and felt a "pop and a sharp pain" in his left knee.[1] Quiles reported his injury and went to the facility's medical office. The medical administrator told Quiles that his knee was swollen and he "need[ed] to see the doctor . . . ."

That same day, Quiles went to see the County's physician, Dr. Charles Grubb. Dr. Grubb examined petitioner's knee and found tenderness of the medial collateral ligament and swelling and tenderness over the patella tendon.

---

[1] The incident was recorded on videotape as part of the facility's routine surveillance.

Dr. Grubb told Quiles to see an orthopedist to "check for internal derangement of the knee and ligamentous damage."

A few days later, Quiles received a telephone call, denying his request for treatment through the County's workers' compensation insurance carrier. Because the County declined coverage for treatment of his knee, Quiles made an appointment with his personal physician, Dr. Frank Capecci. In April 2014, about a month after the incident, Dr. Capecci examined Quiles' knee, prescribed physical therapy, and scheduled an MRI.

Two days after seeing Dr. Capecci, Quiles went to the emergency room at Saint Clare's Hospital, complaining of knee pain.[2] The hospital record indicated Quiles reported running approximately 100 yards a few days earlier and suffered knee pain, which got progressively worse.[3]

Quiles had an MRI of his left knee. After reviewing the MRI report, Dr. Capecci injected the left knee with cortisone and ordered physical therapy.

---

[2] Quiles went to the emergency room because Dr. Capecci's office was closed.

[3] During his testimony before the Workers' Compensation judge, Quiles did not recall telling anyone at the hospital he had been running. To the contrary, Quiles testified he had not run or performed any cardiovascular workout since the incident on March 18, 2014.

A-3938-17T3

Through the summer of 2014, Quiles continued to work as a corrections officer but was not required to climb stairs.

Because Quiles continued to experience pain, buckling, and swelling of his left knee, he returned to Dr. Capecci in the fall of 2014. The doctor recommended arthroscopic surgery to determine the cause of the knee pain and Quiles underwent surgery on November 13, 2014. During the surgery, Dr. Capecci found a left knee meniscal tear and laxity in the anterior cruciate ligament (ACL). Dr. Capecci noted an "incompetent torn [ACL]," rendering the ligament non-functional. Three months later, Dr. Capecci surgically reconstructed Quiles' ACL.

Quiles filed a claim petition with the Division for his work-related knee injury. The County filed an answer, admitting Quiles was employed by the County on the date of the injury but denying the injury "[a]rose out of and [was] in the course of employment."

Quiles filed a motion for medical treatment and temporary disability benefits. The County filed an answering statement, claiming there was no accident and petitioner's injury was idiopathic. The Workers' Compensation judge took testimony in connection with petitioner's application. In addition to

testimony from Quiles, the judge heard testimony from Dr. Capecci. The judge also heard testimony from Dr. Richard Rosa, the County's medical expert.

During his testimony on the motion for medical treatment and temporary disability benefits, Quiles presented the video surveillance capturing his injury. The judge viewed the video; however, he found the video was "not sufficient to allow [him] to focus in on the nature of the injury and the nature of the event . . . ." The video showed Quiles climbing metal stairs while wearing heavy equipment and combat boots. In addition to offering the video, Quiles testified he exercised frequently prior to his knee injury, including weight lifting, running, and playing basketball. Quiles explained he was unable to continue the same exercise routine following his knee injury.

Petitioner's treating physician, Dr. Capecci, testified in support of the motion. The doctor opined "[i]t's my opinion that the ACL tear that I viewed on arthroscopy likely occurred" while Quiles was climbing the stairs of the corrections facility on March 18, 2014. Dr. Capecci testified he was unaware of anything that could have produced petitioner's knee injury other than the incident on March 18, 2014.

Dr. Rosa testified for the County in opposition to petitioner's motion. He said petitioner "probably" sustained "some knee injury" on March 18, 2014, and

the injury depicted in the video caused petitioner's knee swelling and tenderness. Dr. Rosa also testified an acute ACL tear was not possible based on his review of petitioner's activity in the video. Dr. Rosa did not observe anything in the video supporting an incompetent torn ACL as described by Dr. Capecci.

Following the testimony, the judge rendered an oral decision on petitioner's motion. The judge found the County failed to show Quiles' injury was idiopathic, the County failed to show an alternative cause for the injury, and the injury was "more probabl[y] than not" caused by the March 18, 2014 incident. The judge determined petitioner's job as a corrections officer involved climbing stairs while wearing twenty-five pounds of equipment. He explained the videotape of the incident, by itself, was insufficient to determine exactly what happened and did not "see what Dr. Rosa apparently believed he could see" on the videotape. The judge concluded Quiles injured his knee while "wearing equipment necessitated by his employment" and "performing a task . . . stressful to the knees."

In accordance with his findings, the judge awarded medical treatment and temporary disability benefits. The judge required the parties to determine the "period and amounts of temporary compensation due and owing, and the medical expenditures to be paid or reimbursed to the private medical carrier."

The parties were unable to resolve the payment of temporary compensation and medical expenses. The matter proceeded to trial to determine the extent of petitioner's disability and amount to be awarded for his disability. At trial, the judge heard testimony from Quiles as well as his medical expert, Dr. Stephen Flood. The County presented testimony from its medical expert, Dr. Albert Thrower.

The judge agreed to incorporate petitioner's prior testimony in considering the extent of his disability and the amount of an award. In addition, Quiles testified he never conferred with Dr. Capecci regarding a knee injury prior to March 18, 2014 and did not receive treatment for a knee injury prior to that date. He also testified he did not experience any limitations in exercising or participating in recreational activities prior to March 18, 2014.

Dr. Flood then testified for petitioner. He stated the "overwhelming majority of the problems which make up [his report] are as a result of [the] March 18, 2014 injury, [rather] than [Quiles'] subsequent treatment for that injury." Dr. Flood also testified that the reference in a medical record to a complaint of knee pain in 2008 might have created a "one percent" preexisting condition because people generally do not fully recover from injuries to joints.

 A-3938-17T3

On behalf of the County, Dr. Thrower testified. He opined "it's very possible that the lateral meniscus was torn going up the stairs . . . . That's the most likely explanation for it." Dr. Thrower also stated the knee pain reference in a 2008 medical record was a "very non-specific" finding and could have indicated "arthritis" or that petitioner "overd[id] it and . . . irritated the knee."

The judge rendered an oral decision on March 20, 2018, finding there was insufficient evidence of a prior or subsequent injury to petitioner's knee. The judge determined Quiles suffered a thirty-percent permanent partial disability as a result of his March 18, 2014 injury.

The judge found the only evidence of any prior knee pain was a complaint reported by Quiles in 2008 when he saw Dr. Capecci for medical issues related to his shoulder and upper back. Because there was no treatment, diagnostic work, or further record of any knee pain or knee injury in 2008, the judge concluded there was insufficient evidence to establish petitioner suffered a prior knee problem.

The judge also rejected the County's argument that petitioner suffered a subsequent knee injury. The judge determined the April 2014 emergency room visit did not provide sufficient evidence to establish a subsequent injury because Quiles denied telling anyone at the hospital he had been running. The judge also

dismissed the County's argument that Quiles may have incurred a subsequent knee injury resulting from an altercation with prisoners in October 2014. The judge concluded Quiles reported only an injury to his elbow and registered no knee complaints stemming from the October 2014 incident.

The judge reviewed petitioner's disability as a result of the March 18, 2014 incident. He found Dr. Flood's testimony that the "gold standard" for discovering an ACL tear is arthroscopic surgery to be "compelling and reasonable." Based on these findings and the testimony of Drs. Flood and Thrower that there is "good stability" in petitioner's leg, the judge assessed a thirty-percent permanent partial disability for the knee injury on March 18, 2014.

On appeal, the County asserts petitioner's injury was idiopathic and not work-related. In addition, the County argues the judge should have dismissed the claim for lack of sufficient credible evidence. The County also contends the judge failed to apply a functional limitation credit for Quiles' pre-existing knee injury.

Our review of workers' compensation claims is limited to "'whether the findings could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the

A-3938-17T3

opportunity of the one who heard the witnesses to judge of their credibility.'" Linquist v. Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). We may not substitute our own fact-findings for those made by the compensation judge. Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000). We defer to the factual findings and legal determinations by the compensation judge "unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Linquist, 175 N.J. at 262 (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)).

To be compensable, the employee's injury must arise out of and in the course of employment pursuant to N.J.S.A. 34:15-7. The statute "looks to a causal connection between the employment and the injury." Verge v. Cty. of Morris, 272 N.J. Super. 118, 124 (App. Div. 1994) (quoting Coleman v. Cycle Transformer Corp., 105 N.J. 285, 290 (1986)). When an injury results from a risk that is purely personal to the employee, the injury is not compensable because the risk lacks a causal connection to the employment as "aris[ing] out of that employment." Coleman, 105 N.J. at 292. Such risks are "idiopathic," meaning personal to the petitioner and not caused by or related to the work. Verge, 272 N.J. Super. at 127.

10

Having reviewed the record, we reject the County's argument that petitioner's injury was idiopathic and could have happened "anywhere."[4] There is sufficient evidence in the record supporting the judge's finding that Quiles' injury arose from his employment as a corrections officer because he climbed metal stairs while wearing combat boots and equipment weighing twenty-five pounds. Drs. Capecci, Flood, and Thrower testified petitioner's injuries were probably caused by climbing the stairs at the corrections facility on March 18, 2014. Further, the judge placed greater significance on Dr. Capecci's testimony because a treating doctor had "the greater opportunity . . . as compared with a doctor who conducts a single examination in order to become an expert medical witness, to know, understand and decide upon the producing cause of the patient's condition." Bober v. Indep. Plating Corp., 28 N.J. 160, 167 (1958).

Nor did the County show Quiles' injury was "solely" from a prior condition. The only evidence offered by the County in support of its argument is petitioner's complaint of knee pain during a 2008 visit to Dr. Capecci. Petitioner's visit to the doctor in 2008 related to complaints regarding his

---

[4] The County relies on an unpublished opinion in support of its argument that petitioner's injury was idiopathic. See R. 1:36-3 (barring citation of an unpublished opinion). We are guided instead by our subsequent published decision addressing idiopathic injuries, Verge, 272 N.J. Super. at 124. See also Shaudys v. IMO Indus., Inc., 285 N.J. Super. 407, 414-15 (App. Div. 1995).

A-3938-17T3

shoulder and upper back. Moreover, because the judge found petitioner exercised and participated in recreational activities until the March 18, 2014 incident, Quiles did not have a pre-existing knee problem.

We next examine the County's claim that the judge erred in failing to award a functional limitation credit for petitioner's pre-existing knee injury. In accordance with N.J.S.A. 34:15-12(d), if an employer establishes a prior loss of function by "competent evidence, and subsequently an injury . . . arising out of and in the course of an employment occurs to that part of the body . . . where there was a previous loss of function, then the employer" will receive a credit "for the previous loss of function . . . ." See also Lindquist, 175 N.J. at 264-65.

The judge heard testimony from competing medical experts related to petitioner's knee injury and concluded there was insufficient evidence to establish petitioner suffered a knee injury prior to March 18, 2014. In addition, the County's medical expert testified there was no pre-existing disability to petitioner's left knee.

We likewise reject the County's contention that the compensation judge erred in failing to dismiss petitioner's claim based on a lack of sufficient credible evidence. "Although . . . [c]ompensation [j]udges are regarded as experts, and their findings are entitled to deference, such findings nevertheless must be

12

supported by articulated reasons grounded in the evidence." Lewicki v. N.J. Art Foundry, 88 N.J. 75, 89–90 (1981) (citations omitted). "[E]ven a tribunal with expertise must predicate its ultimate determination on findings sustained by proofs to which it applies its special knowledge." Id. at 90 (alterations in original) (quoting Goldklang v. Metro. Life, 130 N.J. Super. 307, 311 (App. Div. 1974)).

After reviewing the record, including six days of testimony before the workers' compensation court, we are satisfied the judge's findings were supported by "articulated reasons grounded in the evidence." Lewicki, 88 N.J. at 89–90.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3938-17T3