**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2331-19

HECTOR SOTO,

     Petitioner-Respondent,

v.

EXCLUSIVE
COACHWORKS, INC.,

     Respondent-Appellant.

_____

          Submitted December 9, 2020 – Decided April 12, 2021

          Before Judges Sumners and Mitterhoff.

          On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2017-32597.

          Carpenter, McCadden & Lane, LLP, attorneys for appellant (Kelly M. Smith, on the briefs).

          Ginarte, Gallardo, Gonzalez & Winograd, LLP, attorneys for respondent (Daniel Maisel, of counsel and on the brief; Sean T. Payne, on the brief).

PER CURIAM

Respondent Exclusive Coachworks, Inc. appeals from a January 10, 2020 order entered by a Judge of Worker's Compensation requiring it to pay for petitioner Hector Soto's knee replacement as well as provide temporary disability benefits, N.J.S.A. 34:15-12, while he recovered from surgery. We affirm.

We discern the following facts from the record. Petitioner, who was employed by respondent as an autobody repairman, was injured on October 3, 2017, when a hammer struck the inside of his left knee. Because petitioner was unable to walk, his employer instructed him to go to the emergency room. On October 5, 2017, emergency room (ER) physicians performed an x-ray. There was no evidence of acute fracture or dislocation; however, there was a small suprapatellar effusion. The ER doctor instructed him to follow up with an orthopedic surgeon.

On October 10, 2017, petitioner, on his own accord, went to Dr. Robin Innella, who sent him for an MRI.[1] After reviewing the MRI, Dr. Innella diagnosed petitioner with a torn meniscus as well as a trabecular bone injury in his left knee. Dr. Innella recommended petitioner undergo an arthroscopic surgery to his left knee.

The worker's compensation carrier referred petitioner to two other orthopedists, Dr. Thomas Nordstrom and Dr. Wayne Colizza, both of whom agreed that arthroscopic surgery was medically necessary and causally related to the October 3, 2017 workplace injury. On July 13, 2018, Dr. Colizza performed an authorized arthroscopy of the left knee and partial meniscectomies. After the surgery, however, petitioner's condition did not improve, despite additional conservative treatment including physical therapy and injections. Dr. Colizza initially opined that the work injury and the

---

[1] Dr. Innella had performed surgery on petitioner's left knee after a 1995 soccer injury. In 2009, petitioner suffered another injury to his left knee after being involved in a motor vehicle accident. In 2010, petitioner underwent a left knee arthroscopy and partial meniscectomies. On December 16, 2010, in connection with the motor vehicle accident, petitioner sought a second opinion from Dr. Innella, who noted petitioner's degenerative changes were likely exacerbated during the car accident. On January 27, 2011, Dr. Innella recommended a series of injections, but informed petitioner that he "may need a knee replacement." After 2011, petitioner had no further treatment or complaints concerning his knee until the subject accident in 2017.

A-2331-19

subsequent surgery "accelerated" petitioner's need for a total knee replacement but changed his position after reviewing records from petitioner's prior medical treatments.

On April 26, 2019, petitioner filed a motion for medical and temporary disability benefits seeking authorization for a left knee replacement and temporary benefits retroactive to January 2019. A four-day trial was conducted before a judge of compensation.[2] The issues at trial were whether petitioner's undisputed need for a knee replacement was causally related to the October 3, 2017 work injury and whether petitioner was entitled to past or future benefits.

Dr. Morris Horowitz testified on behalf of petitioner.[3] He examined petitioner in January 2018 and February 2019. He testified that Dr. Innella's 2011 statement that petitioner "may need a knee replacement" was not a definitive medical diagnosis. Additionally, Dr. Horowitz testified petitioner's condition could have been exacerbated and aggravated in the nine months between the injury and the subsequent surgery. Based on the objective medical records and the pathophysiological understanding of the trauma involved, Dr.

---

[2] Petitioner testified on his own behalf with the assistance of an interpreter.

[3] There was no objection to qualifying Dr. Horowitz as an expert in forensic medicine and orthopedic evaluation.

A-2331-19

Horowitz concluded, within a reasonable degree of medical certainty, there was a causal relationship between the work injury and petitioner's need for a total knee replacement.

Dr. Colizza testified on behalf of respondent.[4] Dr. Colizza testified that, after reviewing petitioner's medical records as to his previous injuries and surgeries,[5] his opinion "changed significantly" as to causality. In Dr. Colizza's opinion, within a reasonable degree of medical certainty, petitioner's current complaints were related to his osteoarthritis, not the October 3, 2017 work injury. Although he agreed that petitioner needed a knee replacement, Dr. Colizza concluded that the need for the knee replacement was precipitated by petitioner's injuries in 1995 and 2009.

After the hearing, the judge issued an order and opinion authorizing a total knee replacement and temporary disability benefits from the date of the knee replacement surgery until petitioner attains maximum medical improvement. The judge found there was "no doubt that [p]etitioner had an arthritic left knee

---

[4] Petitioner did not object to Dr. Colizza being qualified as an expert in orthopedic surgery.

[5] Petitioner did not tell the doctors about his prior knee surgeries because they did not ask him about them. Petitioner did not think it was relevant to tell the doctors, including Dr. Colizza, about his prior surgeries because his knee hurt from the accident.

A-2331-19

at the time of his [2017] work injury. The testimony and medical records clearly show[ed] two prior surgeries in 1995 and 2010 for his left knee, and various degrees of arthritic wear over the years prior to his work injury." Notwithstanding, the judge noted that "the employer takes the employee as the employer finds the employee, with all of the pre-existing disease and infirmity that may exist." Verge v. Cnty. of Morris. 272 N.J. Super. 118, 125 (App. Div. 1994) (citing Kelly v. Alarmtec, Inc., 160 N.J. Super. 208, 212 (App. Div. 1978)).

The judge found it was undisputed that petitioner suffered a work injury to his left knee in the subject 2017 accident. Dr. Horowitz testified that the work injury in this matter and walking on the injured knee for approximately nine months without treatment probably aggravated and exacerbated the pre-existing conditions in the knee. The judge noted that Dr. Colizza, as well, acknowledged that the nine months without treatment and the surgeries possibly caused an exacerbation to petitioner's underlying osteoarthritis. The judge concluded that, although the work injury may not be the sole reason that petitioner needs a total knee replacement, it was probable that the work injury and the nine months without treatment accelerated the need for a total knee replacement. Finding Dr. Horowitz's opinion more credible than Dr. Colizza's opinion, the judge

6

concluded there was a causal relationship between the October 3, 2017 work accident and the current need for a knee replacement.[6]  This appeal ensued.

It is well-settled that "the scope of appellate review of factual findings by a judge of compensation is limited."  Renner v. AT&T, 218 N.J. 435, 448 (2014) (citing Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).  Our scope of review is "limited to whether the findings made could reasonably have been reached on sufficient credible evidence present in the record . . . with due regard to the agency's expertise."  McGory v. SLS Landscaping, 463 N.J. Super. 437, 452 (App. Div. 2020) (quoting Hersh v. Cnty. of Morris, 217 N.J. 236, 242 (2014)). "We may not substitute our own factfinding for that of the [j]udge of [c]ompensation even if we were inclined to do so."  Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000).  "We owe no particular deference to the judge of compensation's interpretation of the law."  Sexton v. Cnty. of Cumberland/Cumberland Manor, 404 N.J. Super. 542, 548 (App. Div. 2009) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

---

[6]  The judge of compensation reserved on the issue of petitioner's claim for temporary disability benefits from January 2019 to the date of the total knee replacement.

On appeal, respondent argues the judge erred when he credited the opinion of petitioner's expert Dr. Horowitz, who was retained for the purposes of litigation, rather than the opinion of Dr. Colizza as the treating physician. Considering the record, and applying our deferential standard of review, we are compelled to disagree.

We are mindful that "our courts have developed a guidepost—where the medical testimony is in conflict, greater weight should be accorded to the testimony of the treating physician." Bialko v. H. Baker Milk Co., 38 N.J. Super. 169, 171 (App. Div. 1955). Nonetheless, the "maze of conflicting medical proof must be appraised by judges, not medical experts, and in the final analysis the determination of which is the soundest is made by them on the particular facts of the case." Ibid. In that regard, "the weight to be given to the evidence of experts is within the competence of the fact-finder." LaBracio Fam. P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001); see also Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) ("[T]he credibility of the expert and the weight to be accorded his testimony rests in the domain of the trier of fact.") "Indeed, a judge is not obligated to accept an expert's opinion, even if the expert was 'impressive.'" State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004) (quoting State v.

A-2331-19

Carpenter, 268 N.J. Super. 378, 383 (App. Div. 1993)). In that same vein, "[t]he factfinder may accept some of the expert's testimony and reject the rest." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001) (citing Todd v. Sheridan, 268 N.J. Super. 387, 401 (App. Div. 1993)). "That is, a factfinder is not bound to accept the testimony of an expert witness, even if it is unrebutted by any other evidence." Id. at 431 (citing Johnson v. Am. Homestead Mortg. Corp., 306 N.J. Super. 429, 438 (App. Div. 1997)).

Given these governing principles and our review of the record, we are satisfied the judge's decision is well-supported by the record. Indeed, both experts agreed petitioner sustained an injury to his knee in the 2017 accident that required, at a minimum, arthroscopic surgery. There was no evidence presented that petitioner had any complaints or treatment to his knee between 2011 and 2017. (3T24:12-15). Both experts agreed petitioner needs a knee replacement. Both experts agreed that the period between the injury and the arthroscopic surgery could have exacerbated petitioner's underlying arthritic changes and accelerated his need for a knee replacement. Based on the substantial agreement of the expert opinions, and the objective evidence in the record, the judge's finding that Dr. Horowitz was more credible than Dr. Colizza is sound, and we discern no basis to disturb it. See In re Return of Weapons to

9

J.W.D., 149 N.J. 108, 116-17 (1997) (citing Bonnco Petrol, Inc. v. Epstein, 115

N.J. 599, 607 (1989)).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2331-19