JAMES REYNOLDS, PETITIONER-DEFENDANT, v. PASSAIC VALLEY SEWERAGE COMMISSIONERS, RESPONDENT-PROSECUTOR.

Argued October 7, 1942—Decided August 13, 1943.

Before Justices CASE, DONGES and COLIE.

For the prosecutor, *McCarter, English & Egner* (*Verling C. Enteman* and *Nicholas Conover English*).

For the defendant, *George W. Wolin* and *Samuel J. Marantz.*

The opinion of the court was delivered by

DONGES, J. Petitioner-defendant was employed by respondent-prosecutor as a watchman at its Newark Bay pumping station. On February 1st, 1940, he met with an accident while so employed, and filed a petition for compensation. The Compensation Bureau concluded that the petitioner had not sustained an accident arising out of his employment and dismissed the petition. On appeal to the Essex County Court of Common Pleas, Judge Hartshorne determined that the petitioner had suffered an accident arising out of and in the course of his employment and reversed the Bureau and entered judgment for petitioner. This writ of *certiorari* was allowed to review that judgment.

Two questions are raised by prosecutor. First, did petitioner sustain an accident arising out of his employment? Second, did the Essex County Court of Common Pleas err in its award to petitioner of temporary disability benefits and medical expenses?

Judge Hartshorne found the facts as follows:

On February 1st, 1940, petitioner was a watchman for respondent, and as such used a small shanty, furnished him by respondent, to keep warm in winter, where there were an arm chair, a pot stove, and one or two stools and pails of coal. Previously thereto, petitioner had had certain fainting spells, had suffered one or more paralytic strokes, affecting his entire right side, and had also suffered several epileptic fits, one on August 20th, 1938, another on October 11th, 1938, a third, after the fall, on March 25th, 1940, and possibly others. On the day in question he was seated in the arm chair in the shanty, when he claims he got up, or started to get up therefrom, to look outside, and was thereafter found

by his superior, Callery, lying on his right side with his face pressed against the stove, which was searing his entire forehead and right cheek, while his left hand was waving the air. In fact, due to the cramped quarters of this small shanty, but five by six feet over all, petitioner seems to have become wedged in his fall, with the upper part of his body between the stove and the wall, which were but a foot apart, his legs, alone movable, in addition to his left arm, being pressed against the door. Despite this constant searing of his face, there is nothing to show he made a single outcry. In fact, the only reason he was found at all by Callery was due to the barking of a dog outside the shanty, the dog being evidently startled by the noise of the man's fall inside.

"Petitioner himself offers the only direct testimony as to the cause of the fall. He says he had his left foot, his good one, hooked around the chair leg, and thus tripped when he started to get up. But not only was the chair found undisturbed by Callery, as it probably would not have been had he thus tripped, but petitioner's physical demonstration before the Bureau, as indicated in the record, and as found by the Commissioner, does not show a tripping, but that he was upright on both feet before he fell. Indeed, it would seem improbable that a man with one good leg, his left, and one bad one, his right, would have sought to rise on the bad one rather than on the good one. In addition, not only is there substantial medical evidence, opinion to be sure, to the effect that it was petitioner's physical condition, specifically an epileptic fit, which caused his fall, but while petitioner's witnesses are unfortunately somewhat vague as to his physical condition following the accident, the fact that he made no outcry whatever, while this hot stove was burning into his face, would certainly seem to indicate that he was in a fit, as the doctors say. For, while his speech was affected by his paralysis, he certainly would use his voice to make a noise. Somewhat to the same effect is the fact that he remained constantly on his right side, with his face pressed against the stove, despite this burning of his flesh. Though here it must be remembered that he could move only with difficulty, due to the paralysis of his right side. In short,

with these inconsistencies, both in his own words and actions, as well as his physical demonstration before the Bureau as to how the accident occurred, this court must concur with the Bureau in finding that petitioner has not borne the necessary burden of proof that the accident was due to his tripping over the chair in the performance of his duties rather than to an epileptic fit."

Prosecutor in its brief says:

"The facts are not in substantial dispute. Succinctly the petitioner was employed by the respondent as a watchman. There was provided for his comfort and convenience a small shanty measuring approximately 5½ by 6½ feet, which contained, among other things, a chair and a small pot stove. The injuries, for which workmen's compensation benefits are sought in this proceeding, consist of burns on the face received by the petitioner when his face came in contact with the pot stove in the shanty. It was found as a fact both in the Workmen's Compensation Bureau and in the Essex County Court of Common Pleas that the cause of the petitioner's face coming in contact with the stove was not due to his tripping over the chair in the shanty or other like occurrence but was due solely to an epileptic seizure which he suffered and which was unconnected with his employment."

It is uncontroverted that the accident arose in the course of petitioner's employment. As stated in prosecutor's brief, the shanty, the chair and the pot stove "were provided for his comfort and convenience" in the performance of his duties to his employer. In other words, he was where, by his employment, he was expected to be. Mr. Justice Trenchard, in *Bryant* v. *Fissell*, 84 *N. J. L.* 72, said: "We conclude, therefore, that an accident arises 'in the course of the employment' if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." There can be no dispute that the facts in the present case warrant the conclusion that the accident occurred "in the course of" petitioner's employment.

His presence in the shanty being in the course of his employment, and the accident occurring in the performance

of his duty to his employer, it follows that it arose "out of his employment." In *Newcomb* v. *Albertson,* 85 *N. J. L.* 435, Mr. Justice Swayze, citing *Clover, Clayton & Co., Ltd.,* v. *Hughes* (1910), *A. C.* 242, quotes Lord Loreburn in the House of Lords, as follows: "It seems to me enough if it appears that the employment is one of the contributing causes without which the accident which actually happened would not have happened, and if the accident is one of the contributing causes without which the injury which actually followed would not have followed."

In *Bryant* v. *Fissell, supra,* it was said:

"We conclude, therefore, that an accident arises 'out of' the employment when it is something the risk 'of which might have been contemplated by a reasonable person, when entering the employment, as incidental to it. That this is so appears from an examination of *Armitage* v. *Lancashire and Yorkshire Railway Co., supra; Collins* v. *Collins* (1907), 2 *I. R.* 104; *Murphy* v. *Berwick* (1909), 43 *Ir. L. T.* 126; and *Blake* v. *Head* (1912), 106 *L. J.* 822. * * *

"A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. *Pope* v. *Hill's Plymouth Co.* (1910), 102 *L. T.* 632, and on appeal (1912), 105 *Id.* 678.

"And a risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment. *Elliott's Workmen's Compensation Act* (*6th ed.*) 71."

See, also, *Zabriskie* v. *Erie Railroad Co.,* 85 *N. J. L.* 157; *affirmed,* 86 *Id.* 266; *Mountain Ice Co.* v. *Durkin,* 6 *N. J. Mis. R.* 1111; *affirmed,* 105 *N. J. L.* 636.

We conclude that all of the attributes of an accident arising out of the employment were here present. There is no question but that the employee was in the performance of his duty when the injury was received. It was clearly contemplated that he would occupy and spend part of the time he was on duty in the shanty. The pot stove was furnished by the employer. The thing that occurred was connected with

the service the employee had to perform in fulfilling his contract, and the use of the shanty, with the pot stove, was incidental to his employment.

Nor does the theory that the employee suffered an epileptic fit help the prosecutor. A very similar situation was dealt with in *Ervin* v. *Industrial Commission,* 4 *N. E. Rep.* (2d) 22, where the Supreme Court of Illinois said:

"It is urged by the respondent that if we conjecture on how the deceased got into the fire, the evidence tends to support, more than any other, the theory that the deceased suffered a paralytic stroke, which caused his fall into the fire. If we should deduce that fact from the circumstances established by the record it would not assist the respondent. The burns received by the decedent while on or in the fire were the controlling factor resulting in the decedent's death and the proximate cause of it. Even though the ideopathic condition of the employee may be a remote cause of his receiving traumatic injuries, nevertheless such remote cause does not remove the occurrence from the field of the accident but it is properly classified as such." Citing cases. "No logical conclusion can be reached by the record other than that the deceased fell into the fire. Whether some physical ailment brought about the fall is wholly immaterial. Neither was the risk of the fire common to the neighborhood. * * * The fire was a hazard only to those employees rightfully on the premises in the discharge of their duties."

In *Connelly* v. *Samaritan Hospital,* 181 *N. E. Rep.* 76, the Court of Appeals of New York, speaking through present Chief Judge Lehman, said:

"A physical seizure unrelated to the employment is not such an accident as is compensable. * * * It is the fall and injury resulting from it that constitutes an accident within the purview of the statute. The cause may be disregarded and the inquiry limited to an investigation to disclose whether the fall, having occurred, bore with it such consequences as would not have occurred except for the employment. * * * Thus where the primary cause of the accident must be eliminated because it has no relation to the

employment, the inquiry proceeds to possible co-operating causes which produced the injury. The test is the same. If, except for the employment, the fall, though due to a cause not related to the employment, would not have carried the consequences it did, then causal connection is established between injury and employment, and the accidental injury arose out of the employment. The employment has subjected the workman to a special danger which in fact resulted in injury."

To the same effect are *Madden's Case, 222 Mass.* 487; 111 *N. E. Rep.* 379; *Cusick's Case, 260 Mass.* 421; 157 *N. E. Rep.* 596; *Industrial Commission of Ohio* v. *Nelson,* 186 *N. E. Rep.* 735.

The sound rule is that whenever conditions attached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment.

We conclude that the record in the instant case discloses that the danger was incidental to the employer's business and that the accident in which the employee was injured arose out of and in the course of his employment.

Prosecutor complains of the allowance of compensation for both temporary and permanent disability, claiming that, since the employee's condition proved to be one of 100% permanent disability and had been such since the time of the accident, there should have been the statutory award for permanent disability and no allowance for temporary. Mr. Justice Perskie, in dealing with a like contention in *Petersen* v. *Foundation Co., 128 N. J. L.* 234, said: "There is no merit to this belated contention. Whatever the holding may be in other states, in our state, under our act, the right both to temporary (*N. J. S. A.* 34:15–12 (*a*)) and permanent disability (*N. J. S. A.* 34:15–12 (*b*)) as the result of a single accident, is a right too firmly established to justify question or debate."

In *Vishney* v. *Empire Steel and Ice Co., 87 N. J. L.* 481, 483, it was said: "Temporary, as distinguished from permanent disability, under the Workmen's Compensation Act, is

a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit."

It would seem that in all cases of accidental injury resulting in complete inability to work, the total disability existing is deemed to be temporary until after a course of treatment and observation it is discovered to be permanent, and that fact is duly established. The fact that the permanent disability turns out to be complete does not distinguish the case from one where the temporary complete disability is followed by a condition of permanent disability to a degree less than 100%. We see no merit in the contention.

We think there was no error in the allowances for medical expenses and counsel fee.

The writ is dismissed, with costs.

Mr. Justice Colie is of the opinion that the proofs do not disclose an accident arising out of and in the course of the employment, and therefore dissents.