JUDY COLEMAN, PETITIONER-RESPONDENT, v. CYCLE
TRANSFORMER CORP., RESPONDENT-APPELLANT.

Argued May 13, 1986—Decided November 14, 1986.

*George J. Kenny* argued the cause for appellant (*Connell, Foley & Geiser,* attorneys; *Frank A. Lattal,* on the brief).

*David S. Sussman* argued the cause for respondent (*Ralph B. Sussman,* attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

In this workers' compensation case the judge of compensation dismissed the claim petition because "the accident did not arise out of the employment * * *." The Appellate Division, in an unreported opinion, reversed and remanded on the strength of *Chen v. Federated Dep't Stores,* 199 *N.J.Super.* 336 (App. Div.1985). We granted certification, 102 *N.J.* 399 (1986), to review that determination. We reverse.

I

On December 21, 1983, petitioner, Judy Coleman, was employed as an inspector-tester by respondent, Cycle Transformer Corporation (Cycle). As was her custom she had lunch, which she had brought with her from home, in the lunchroom set aside by her employer on its premises for that purpose. The dining area was not an elaborate facility: it contained only tables, chairs, a coffee and soda machine, and a refrigerator.

The employer neither served nor provided any food. Petitioner, who was free to dine on or off the premises, was not paid for her half-hour lunch break. It was after she had finished her lunch that petitioner experienced a bizarre mishap, which she described as follows:

> I was done eating. I went to light a cigarette. I struck the match and as I went to turn my head to the right to talk to one of my co-workers, you know, the tip of my hair caught the match and my hair went up in flames.
>
>     \*        \*        \*        \*        \*        \*        \*        \*
>
> [A] couple of the co-workers there beat out the fire, put the fire out. Once the fire was out I—I had this chemical on my hair. I had a new growth of hair underneath, so the hair burned down so much and then burned out, the fire went out with them beating it.

The chemical to which petitioner referred was actually two products—one, called S Curl Activator, is "something like a perm" and had been applied by a beauty parlor some five months previously; the other, Stay Soft Flow Activator, had been put on by petitioner that morning, to "keep the curl in [her] hair in place." Although we gather that petitioner has brought suit against the manufacturers of those products, their role, if any, in causing the accident or injury is not evidenced by this record. We therefore attach no significance on this appeal to the presence of those preparations.

Petitioner's workers' compensation claim sought benefits for facial and head burns, scarring, and neuropsychiatric and dermatological disabilities. Judge McNatt concluded that the accidental touching of a lighted match to the petitioner's hair by the petitioner's own hand was not "reasonably incidental" to her employment. He concluded: "Neither the tasks of her employment, nor the place where she was eating her lunch at the time, nor any act on the part of any of her co-employees caused her injury," and therefore "the accident did not arise out of" the employment.

On appeal, the Appellate Division read *Chen v. Federated Dep't Stores, supra,* 199 *N.J.Super.* 336, to hold "unequivocally" that "injuries occurring on the employer's premises during

a regular lunch hour arise in the course of employment and are solely remediable under the Workers' Compensation Act." Because the court below viewed the facts in this case as "legally indistinguishable" from those in *Chen,* in which plaintiff was injured while shopping on her employer's premises during a lunch break, it concluded that *Chen* was "dispositive" and held that "Coleman's injuries in this case arose out of and in the course of employment." The Appellate Division therefore reversed and remanded to the Division of Workers' Compensation for a determination of the nature and extent of disability.

## II

Dean Larson reminds us that "[t]he heart of every compensation act, and the source of most litigation in the compensation field, is the coverage formula." 1 A. Larson, *Workmen's Compensation Law,* § 6.10 (1985) (hereinafter *Larson* ). New Jersey, like most other states, adopted its formula from the British Compensation Act, with its requirement of "accident arising out of and in the course of employment." *Larson, supra,* at § 6.10. Our Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –127, provides in pertinent part:

> When employer and employee shall by agreement, either express or implied, * * * accept the provisions of this article *compensation for personal injuries to * * * such employee by accident arising out of and in the course of employment shall be made by the employer* without regard to the negligence of the employer * * *.
>
> [*N.J.S.A.* 34:15–7 (emphasis supplied).]

According to Dean Larson, "[f]ew groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation." *Larson, supra,* at § 6.10.

The task of construction is made easier by breaking the phrase "in half, with the 'arising out of' portion construed to refer to causal origin, and the 'course of employment' portion to the time, place, and circumstances of the accident in relation to the employment." *Ibid; see Rafferty v. Dairymen's League*

*Coop. Ass'n,* 16 *N.J.Misc.* 363 (Dep't of Labor, Workmen's Comp. Bureau 1938):

The words "out of" relate to the origin or cause of the accident; the words "in the course of," to time, place and circumstances under which the accident takes place. The former words relate to the character of the accident, while the latter words relate to the circumstances under which the accident takes place. An accident comes within the latter words if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during the time to do that thing. The accident, in order to arise "out of" the employment, must be of such nature the risk of which might have been contemplated by a reasonable person when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.

[*Id.* at 366.]

As Dean Larson cautions, even though each test must be "independently applied and met[,] * * * it should never be forgotten that the basic concept of compensation coverage is unitary, not dual, and is best expressed in the term 'work connection.' " *Larson, supra,* at § 6.10.

### III

■ The burden of construction is eased somewhat in this case, for we do not discern a difficult problem in respect of the "in the course of" component of the formula. We need pause on it only long enough to observe that our law on this point is well settled: "[a]n employee need not actually be working in order to meet the 'course of employment' test." *Mikkelsen v. N.L. Indus.,* 72 *N.J.* 209, 212 (1977). The court in *Mikkelsen* cited with approval a line of New Jersey cases that have extended the protection of the Workers' Compensation Act to "injuries sustained within the scope of the work-period and the work-place while the employee was engaged in personally motivated, but customary, or reasonably expectable activities." *Ibid.* Here, petitioner's injuries were sustained on the employer's premises and during a regular lunch hour, circumstances that have long been held to fall within the course of employment. See *Chen v. Federated Dep't Stores, supra,* 199 *N.J.Super.* at 338, and authorities cited there. The mishap was

occasioned by petitioner's smoking—a personally-motivated activity, to be sure, but one that was customary and reasonably to be expected. *See Secor v. Penn Serv. Garage,* 19 *N.J.* 315, 321 (1955) (injuries that occur during minor deviations such as smoking are generally sufficiently related to employment as not to be barred by the "in the course of" requirement); *Larson, supra,* at § 21.40 ("practically all cases hold that smoking does not constitute a departure from the employment * * *."). Hence, petitioner was "in the course of" her employment when the accident occurred.

### IV

The more substantial question is whether petitioner's accident "arose out of" her employment. This simply worded phrase has given rise to "a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion." Note, "Arising 'out of' and 'in the Course of' the Employment Under the New Jersey Workmen's Compensation Act," 20 *Rutgers L.Rev.* 599 (1966) (hereinafter *Note*) (quoting *Herbert v. Samuel Fox & Co.,* [1916] 1 A.C. 405, 419). We view this appeal, however, as relatively straightforward, not encumbered by such distinctions, refinements, or confusion.

The requirement that a compensable accident arise out of the employment looks to a causal connection between the employment and the injury. It must be established that the work was at least a contributing cause of the injury and that the risk of the occurrence was reasonably incident to the employment. *Note, supra,* 20 *Rutgers L.Rev.* at 601. Although a number of tests have been devised for determining the requisite connection, see *Larson, supra,* at §§ 6.20 to 6.60, the "but for" or positional-risk test is now a fixture in New Jersey law. *E.g., Howard v. Harwood's Restaurant Co.,* 25 *N.J.* 72, 82 (1957). Essentially, that test asks "whether it is more probably true than not that the injury would have oc-

curred during the time and place of employment rather than elsewhere." *Id.* at 83. Unless it is more probable that the injury would *not* have occurred under the normal circumstances of everyday life outside of the employment, the necessary causal connection has not been established. *Ibid.*

The "but for" or positional-risk doctrine includes as one of its components the nature of the risk that causes injury to the employee. Those risks that are "distinctly associated" with the employment are easy to identify: they include

> all the obvious kinds of injury one thinks of at once as "industrial injury." All the things that can go wrong around a modern factory, mill, mine, transportation system or construction project—machinery breaking, objects falling, explosives exploding, tractors tipping, fingers getting caught in gears, excavations caving in and so on—are clearly in this category and constitute the bulk of what not only the public but perhaps also the original draftsmen of compensation acts had in mind as their proper concern.
>
> [*Larson, supra,* at § 7.10, *quoted in Howard v. Harwood's Restaurant Co., supra,* 25 *N.J.* at 84.]

New Jersey recognizes a second category of risks—those described as "neutral." *Howard v. Harwood's Restaurant Co., supra,* 25 *N.J.* at 84. Neutral risks have been defined as "uncontrollable circumstances" and "do not originate in the employment environment" but rather "happen to befall the employee during the course of his employment." *Ibid.;* see also *Larson, supra,* at § 6.50 (neutral risks are "neither personal to the claimant nor distinctly associated with the employment."). As common examples of neutral risks the *Howard* opinion offers "acts of God, such as lightning," and the fallen arrow in *Gargiulo v. Gargiulo,* 13 *N.J.* 8 (1953).[1] In *Gargiulo,*

---

[1]Dean Larson observes that

> [i]llustrations of [neutral risk] may be drawn from a wide variety of controversial cases. A man hard at work in the middle of a factory yard may be hit by a stray bullet out of nowhere, bit by a mad dog, stabbed by a lunatic running amuck, struck by lightning, thrown down by a hurricane, killed by enemy bomb, injured by a piece of tin blown from someone's roof, shot by a child playing with an air rifle, murdered as a result of mistaken identity, felled by debris from a distant explosion, or blinded by a flying beetle.
>
> [*Larson, supra,* at § 7.30.]

an employee, while at work in the back yard of his employer's store, was injured when struck by an arrow that a neighborhood boy had shot in the general direction of a tree on the employer's property. The employee received compensation because "but for" the employment, he would not have been in the line of fire and therefore would not have been hit. *Id.* at 13.

In addition to the risks "distinctly associated" with the employment and the "neutral" risks there is a third category of risks—those personal to the employee. Risks falling within this classification do not bear a sufficient causative relationship to the employment to permit courts to say that they arise out of that employment. *Howard v. Harwood's Restaurant, supra,* 25 *N.J.* at 84; *Larson, supra,* at § 7.20. As this Court said in *Howard,* "[i]n these situations, the employment connection with the injury is minimal; it is the personal proclivities or contacts of the employee which gives rise to the harm, so that even though the injury takes place during the employment, compensation is denied." 25 *N.J.* at 85.

For reasons that will appear, we conclude that petitioner's case falls into this last category.

V

The principles in the foregoing section, although easily articulated, have not lent themselves to consistent ease of application. *See generally Note, supra,* 20 *Rutgers L.Rev.* at 601–03 (discussing "troublesome" cases under the "arising out of" requirement). The cases involving idiopathic falls—those brought on by a purely personal condition unrelated to the employment, such as a heart attack or epileptic seizure—illustrate the point. *See, e.g., George v. Great Eastern Food Prods., Inc.,* 44 *N.J.* 44 (1965); *Henderson v. Celanese Corp.,* 16 *N.J.* 208 (1954); *Reynolds v. Passaic Valley Sewerage*

*Comm'rs.*, 130 *N.J.L.* 437 (Sup.Ct.1943), aff'd o.b., 131 *N.J.L.* 327 (E. & A.1944).

In *Reynolds* the employee, a watchman, suffered an epileptic seizure, which caused him to fall against a small pot stove in a shanty furnished by the employer, as a result of which his face was seared by the hot stove. Both the Compensation Bureau and the Common Pleas Court found as a fact that "the cause of the petitioner's face coming in contact with the stove was not * * * his tripping over the chair in the shanty or other like occurrence but was * * * an epileptic seizure which he suffered and which was unconnected with his employment." 130 *N.J.L.* at 440. On appeal the Supreme Court applied the "sound rule" that "whenever conditions attached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment." *Id.* at 443. The record disclosed that "[t]he pot stove was furnished by the employer" and "[t]he thing that occurred was connected with the service the employee had to perform in fulfilling his contract * * *." *Id.* at 441–442. Therefore, "the use of the shanty, with the pot stove, was incidental to his employment." *Id.* at 442. The Supreme Court concluded that the accident arose out of the employment, *ibid*, a conclusion adopted by the Court of Errors and Appeals, 131 *N.J.L.* 327.

In *Henderson v. Celanese Corp., supra*, 16 *N.J.* 208, the petitioner-employee again experienced an epileptic seizure, as a result of which he fell. Unlike the employee in *Reynolds*, however, Henderson struck nothing on his way down. He simply fell unimpeded to the concrete floor. This Court held that the accident did not arise out of the petitioner's employment, and differentiated *Reynolds* on the basis that the concrete floor was neither one of the conditions attached to the place of employment nor, in the language of *Reynolds*, a factor in the "catastrophic combination." *Id.* at 212. The Court concluded that it was just as probable that the same injury would have occurred outside of the employment, *id.* at 214. A

minority of the Court would have awarded compensation because "the accidental injury here was attributable in a substantial part to one of the conditions of employment, the concrete floor * * *." *Id.* at 215.

The view of the *Henderson* dissenters ultimately prevailed in *George v. Great Eastern Food Prods., Inc., supra,* 44 *N.J.* 44. There the employee's fall, in which he suffered a fractured skull that later caused his death, originated in a cardiovascular condition. *Id.* at 45. Again, as in *Henderson,* the employee struck nothing until his head hit the level concrete floor. *Ibid.* The Court, however, found little rational support for *Henderson*'s distinction between those falls that involved striking a machine or a table on the way down and those in which the fall was directly to a concrete floor. *Id.* at 47. "Either no consequence of an idiopathic fall should bring compensability or the nature of the result alone should be looked to as the determinant." *Ibid.* In allowing recovery the Court overruled *Henderson* and held that an accident arises out of the employment "when it is due to a condition of the employment—*i.e.,* a risk of *this* employment * * *." The petitioner's impact with the concrete floor "clearly [met] that test." *Id.* at 48.

The same cannot be said of the accident and injury in the case before us. No condition of the lunchroom played any role, in petitioner Coleman's setting her hair on fire or in the nature and extent of her injury. No employment-related instrumentality, such as the stove in *Reynolds, supra,* 130 *N.J.L.* 437, or the concrete floor in *Henderson, supra,* 16 *N.J.* 208, and *George, supra,* 44 *N.J.* 44, influenced the occurrence itself or the nature and extent of the resultant injury. Unlike *Gargiulo, supra,* 13 *N.J.* 8, in which the requirements of the employee's task took him into the line of fire of an errant arrow, no circumstances of this petitioner's employment was causally related to the unhappy introduction of match to hair. The fact that the accident happened while she was on her employer's premises was the sheerest happenstance, wholly insufficient to supply the necessary nexus between the employment and the accident.

To hold otherwise would be to equate an "incident of employment" with a coincidence. There is not the slightest suggestion that it is more probable that the accident would *not* have occurred under the normal circumstances of everyday life outside of the employment, or that if it had occurred at, say, petitioner's home or in a public restaurant's smoking section or in any of the various other places that those who choose to smoke are still permitted to do so, the resultant injury would somehow have been less severe. *See Howard v. Harwood's Restaurant Co., supra,* 25 *N.J.* at 83. Quite simply, it was the respondent's personal proclivity for smoking, coupled with an unfortunate bit of inattention, that produced the harm. *See Howard, supra,* 25 *N.J.* at 85. That the harm was encountered *in the course of* petitioner's employment serves to satisfy only the first part of the test; the *arising out of* requirement cannot be met in the circumstances presented by this record.

The so-called "smoking" cases are consistent with our analysis and with the result on this appeal. In *Secor v. Penn Serv. Garage, supra,* 19 *N.J.* 315, the petitoner, a garage attendant, spilled gasoline on his work clothes while performing his employment duties. According to petitioner, when he lit a match preparatory to lighting a cigarette, his clothes burst into flames and he was injured. This Court held that the accident arose out of the petitioner's employment: "The spilling of gasoline on his clothes was a risk incident to his employment and but for its occurrence Secor would not have been injured * * *." *Id.* at 323. In *Steel Sales Corp. v. Industrial Comm'n,* 293 *Ill.* 435, 127 *N.E.* 698 (1920), the accident arose out of employment when petitioner's clothing, coated with oil from his job, caught fire when matches in his pocket were lit by petitioner's bumping into a locker. In *Hill-Luthy v. Industrial Comm'n,* 411 *Ill.* 201, 103 *N.E.*2d 605 (1952), however, compensation was denied when petitioner, while engaged in his employment of driving a truck, attempted to light a cigarette and the match head flew off into his eye. The Supreme Court of Illinois concluded that "[t]he use of matches or the act of smoking was in no way

incidental to the employment. The risk encountered was entirely divorced from it, and was one to which the general public is equally exposed while performing such acts in homes or elsewhere for personal enjoyment and comfort." *Id.* at 202, 103 *N.E.*2d at 606. The result in each of the foregoing was determined by the presence or absence of a risk of the employment or a condition thereof but for which the accident would not have happened—oily clothes, gasoline, matches striking an employee locker—an element that is essential to an award of compensation but one that is entirely absent from this case. *But see Puffin v. General Elec. Co.*, 132 *Conn.* 279, 43 *A.*2d 746 (1945) (divided court held dangers of smoking while wearing fluffy angora sweater to be incident of employment).

There remains only the need to address *Chen v. Federated Dep't Stores, supra,* 199 *N.J.Super.* 336. Unlike the court below, we do not find *Chen* dispositive of the instant appeal. Indeed, if *Chen* is of any pertinence, it is only in the limited sense that the case involves the issue of whether the Workers' Compensation Act was the exclusive remedy for an employee who sustained an accident during her lunch break while shopping on her employer's department store premises, when she tripped over a clothes hanger that lay on the floor. Plaintiff, seeking to bring a civil action against her employer, argued that the employment relationship had been severed by reason of the fact that she was shopping at the time of the accident. In affirming summary judgment for the store-employer, the Appellate Division concluded that nothing in the 1979 amendments to the Workers' Compensation Act, which contain a "new definition of travel to and from work in most circumstances." 199 *N.J.Super.* at 338, affected the compensability of on-premises lunchtime injuries. Here is the heart of the opinion:

The occasion of plaintiff's shopping at Abraham & Straus was her employment there. It was convenient for her and beneficial to her employer. No doubt, lunchtime shopping was encouraged by the employer, perhaps even by the allowance of price discounts. An injury in these circumstances was ruled compensable in *Wilson v. Sears Roebuck & Co.*, 14 *Utah* 2d 360, 384 *P.*2d 400 (1963). In our view, lunchtime shopping is an on-premises activity that benefits the employer and should not militate against compensability.

[*Ibid.*]

Nowhere does *Chen* approach the "arising out of employment" issue on which the instant appeal hinges; indeed, that critical phrase is not to be found in the *Chen* opinion, and nothing in that opinion suggests that the issue that engages our attention here was raised there, even tangentially. We have no reason on this appeal, therefore, to disturb *Chen*'s holding.

## VI

The judgment of the Appellate Division is reversed, and the judgment of the Division of Workers' Compensation in favor of respondent-appellant is reinstated.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—none.