285 N.J. Super. 407 (1995)
667 A.2d 204
HENRY R. SHAUDYS, PETITIONER-RESPONDENT,
v.
IMO INDUSTRIES, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1995.
Decided November 30, 1995.
*408 Before Judges STERN, WALLACE and NEWMAN.
*409 Charles N. Martel argued the cause for appellant (Robert W. Friedland, attorney, Mr. Martel on the brief).
Gary E. Adams argued the cause for respondent (Pellettieri, Rabstein and Altman, attorneys, Mr. Adams on the brief).
The opinion of the court was delivered by NEWMAN, J.A.D.
Respondent IMO Industries, Inc. (IMO) appeals from a judgment awarding workers' compensation to its employee, petitioner Henry R. Shaudys. We affirm.
The facts are as follows. On March 22, 1993, petitioner arrived to report for work at IMO at about 7:30 a.m. He parked his car in the employee parking lot owned and maintained by IMO. He testified that he got out of his car and then, as he turned to walk towards his workplace and took a step with his left leg while slamming his car door shut, he twisted his left knee and heard something pop in that knee. He underwent arthroscopic surgery, and was unable to work for over fourteen weeks.
Petitioner filed a claim petition with the Division of Workers' Compensation. On September 28, 1994, a hearing was held before the judge of compensation. Petitioner was the only witness, the parties having agreed to submit the medical records and reports without presenting as witnesses the physicians who made them. Petitioner did not allege that any condition in the parking lot contributed to his injury. The compensation judge found that petitioner had torn the medial meniscus (cartilage between the femur and the tibia, Gordy-Gray, Attorney's Textbook of Medicine, vol. 1A, par. 7A.18 (1989)) in his left knee as a result of twisting while his leg was planted and that he also had a chondromalacia patellae (abnormal softness of the cartilage beneath the patella, Id. at par. 7.70 (1989)). The judge awarded worker's compensation to petitioner.
IMO appeals on the grounds that petitioner's injury did not "arise out of employment" under N.J.S.A. 34:15-7. It concedes, *410 however, that the injury occurred "in the course of employment." See, Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 543 A.2d 45 (1988).[1]
N.J.S.A. 34:15-7 provides that,
When employer and employee shall by agreement ... accept the provisions of this article[,] compensation for personal injuries to ... such employee by accident arising out of and in the course of employment shall be made by the employer without regard to the negligence of the employer, according to the schedule contained in the sections ... of this Title.... [Emphasis added.]
As for the meaning of "arising out of and in the course of employment," the Supreme Court has stated that "[t]he task of construction is made easier by breaking the phrase in half, with the `arising out of' portion construed to refer to causal origin, and the `course of employment' portion to refer to time, place, and circumstances of the accident in relation to the employment." Coleman v. Cycle Transformer Corp., 105 N.J. 285, 288, 520 A.2d 1341 (1986) (quoting from Dean Larson at 1 A. Larson, Workmen's Compensation Law, section 6.10 (1985)). The Court noted, however, that "even though each test must be independently applied and met, it should never be forgotten that the basic concept of compensation coverage is unitary, not dual, and is best expressed in the term `work connection.'" Id. at 289, 520 A.2d 1341 (quoting Larson at section 6.10). The Supreme Court has also emphasized that the Workers' Compensation Act is remedial social legislation that should be liberally construed in order that its beneficent purposes may be accomplished. Fiore v. Consol. Freightways, 140 N.J. 452, 465, 659 A.2d 436 (1995); Torres v. Trenton Times Newspaper, 64 N.J. 458, 461, 317 A.2d 361 (1974).
IMO argues that the "arising out of employment" prong of the statutory test for compensation benefits was not satisfied. The Court in Coleman defined that leg of the test in the following terms:

*411 [t]he accident, in order to arise `out of' the employment, must be of such nature the risk of which might have been contemplated by a reasonable person when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.
[Ibid. (quoting Rafferty v. Dairymen's League Coop. Ass'n, 16 N.J. Misc. 363, 200 A. 493 (Dep't of Labor, Workmen's Comp. Bureau 1938).]
The Court also stated that "the `but for' or positional-risk test is now a fixture in New Jersey law." Id. at 290, 520 A.2d 1341. Under the "but for" test, an injury "arises out of employment" if "it is more probable that the injury would not have occurred under the normal circumstances of everyday life outside the employment." Id. at 291, 520 A.2d 1341.
One of the components of the "but for" test is the nature of the risk that causes injury to the employee. Ibid. Our courts have established three categories of risks. The first category includes risks "distinctly associated" with the employment, which are compensable. Examples of such injuries are industrial injuries resulting from machinery. Ibid. The second category includes compensable "neutral" risks which do not originate in the employment environment but rather happen to befall the employee during the course of employment. Ibid. The typical examples of neutral risks are acts of God, such as lightning. Ibid.; See also Gargiulo v. Gargiulo, 13 N.J. 8, 13, 97 A.2d 593 (1953) (where employee was struck, while working in the back yard of his employer's store, by an arrow that a neighborhood boy had shot at a tree on the employer's property, workers' compensation was awarded because, "but for" his employment, the employee would not have been in the line of fire). The third category of risks includes those "personal" to the employee and are not compensable. In this category, the employment connection with the injury is minimal; it is the personal proclivities or contacts of the employee, not anything associated with the employment, that gives rise to the injury. Coleman, 105 N.J. at 292, 520 A.2d 1341. An epileptic seizure would be a classic example.
Coleman itself, relied on by IMO, involved an injury that fell into the "personal," non-compensable category. In Coleman, an *412 employee suffered burns when her hair caught fire when, during her lunch break, she struck a match to light a cigarette and turned to talk to a co-worker. Id. at 287, 520 A.2d 1341. The Court held that her injury did not "arise out of employment" because
"[t]he fact that the accident happened while she was on her employer's premises was ... a coincidence. There is not the slightest suggestion that it is more probable that the accident would not have occurred under the normal circumstances of everyday life outside of the employment.... Quite simply, it was the [employee's] personal proclivity for smoking, coupled with an unfortunate bit of inattention, that produced the harm."
[Id. at 294-95, 520 A.2d 1341.]
In another relevant case, Spindler v. Universal Chain Corp., 11 N.J. 34, 93 A.2d 171 (1952), relied on by petitioner, the Court awarded workers' compensation to an employee who slipped and fell on the concrete floor of her workplace when she turned from her wire spooling machine to replace a wrench on the tool shelf behind her. The employer alleged that the employee had a physical ailment which caused her fall. The Court held that,
[i]f [her fall] was ... the result of a disease or physical seizure and was not contributed to by `what the workman had to do,' it is not compensable. On the other hand, if the fall `would not have occurred but for the services rendered' in the employment, it is covered by the statute.
[11 N.J. at 39-40, 93 A.2d 171.]
The Court concluded that the employer had not met its burden of proving its allegation that the fall was caused by a physical ailment and so found that the injury "was brought about by the employee's turning to replace the instrument she was using to the shelf located behind her, in furtherance of the purpose of her employment." 11 N.J. at 39, 93 A.2d 171. It therefore awarded workers' compensation benefits.
Petitioner also relies on a series of cases holding that injuries sustained in or near employer-provided parking lots "arose out of employment". In Buerkle v. United Parcel Service, 26 N.J. Super. 404, 98 A.2d 327 (App.Div. 1953), compensation was granted where the employee slipped on ice in an employer-provided parking lot while leaving work. We held that the injury arose out of employment because the ice was an incidental risk of the employment. *413 26 N.J. Super. at 407, 98 A.2d 327. We noted that "an employee does not have to be actually engaged in work for the employer at the time of accident." Ibid. In Lewis v. Walter Scott & Co., Inc., 50 N.J. Super. 283, 141 A.2d 807 (App.Div. 1958), compensation was granted where the employee slipped on ice on a public sidewalk leading from an employer-provided parking lot to the employer's building. In addition to finding that the injury occurred "in the course of" employment despite taking place on a public sidewalk, we held that the injury "arose out of" employment because the dangerous condition of the only passage from the lot to the workplace was a risk reasonably incidental to the employment. 50 N.J. Super. at 287, 141 A.2d 807. In Rice v. Pharmaceuticals, Inc., 65 N.J. Super. 579, 168 A.2d 201 (App.Div. 1961), compensation was granted where the employee injured his foot upon accidentally striking it against a beam placed in the employer-provided parking lot by the employer to prevent cars from banging into the employer's building. In addressing the "arising out of" issue, we noted that "[t]he fact that the employee was not actually engaged in doing his job for his employer at the time of the accident would not prevent an award of compensation." 65 N.J. Super. at 583, 168 A.2d 201. In Konitch v. Hartung, 81 N.J. Super. 376, 382, 195 A.2d 649 (App.Div. 1963), certif. denied, 41 N.J. 389, 197 A.2d 15 (1964), we held that the injury sustained by an employee upon being hit by a co-employee's car in the employer-provided parking lot occurred "in the course of" employment, but did not address whether it "arose out of" employment. In Hammond v. The Great Atlantic & Pacific Tea Co., 56 N.J. 7, 264 A.2d 204 (1970), the Supreme Court cited the above four parking lot cases approvingly. It also held compensable an injury sustained by an employee who fell on a dilapidated public sidewalk while walking to a corner near the employer-maintained parking lot to be picked up by a co-worker who had retrieved her car from the lot. The Court spent most of its opinion analyzing whether the injury occurred "in the course of" employment despite taking place on a public sidewalk. However, it also found that the injury "arose out of" employment because the risk of her accident was *414 reasonably incidental to her employment since it occurred from conduct essential to her employment, i.e. from her leaving work to go home. 56 N.J. at 13, 15, 264 A.2d 204.[2]
Subsequent to Coleman, we addressed the "arising out of" issue in Verge v. County of Morris, 272 N.J. Super. 118, 639 A.2d 378 (App.Div. 1994). In Verge, the employee claimed that she injured her knee as a result of slipping (she did not fall) on a rug on the employer's premises. 272 N.J. Super. at 123, 639 A.2d 378. The employer claimed that the injury was caused by the employee's pre-existing knee condition, not a slip, and so resulted from an "idiopathic event" which fits into the category of non-compensable injuries caused by "personal" conditions having no work connection. Id. at 128, 639 A.2d 378. The compensation judge, concluding that even assuming that the employee's version of events were true the injury resulted from an "idiopathic event," denied the employee's petition before the employer had the opportunity to present its case. Id. at 120, 123, 639 A.2d 378. We reversed and remanded for further fact-finding. We said that
[i]f [the employee's] `slip' ... occurred as she described it in her testimony, and if it were a case of her knee twisting or giving-out for reasons personal to her, it would not constitute either an `idiopathic event' or a neutral risk. It would be directly associated with her employment as she slipped on a rug at a place where her job carried her.
[Id. at 128, 639 A.2d 378.]
In other words, if the slip occurred first, and caused her knee to give out because of her pre-existing knee condition, i.e. the slip would not have led to the injury if she did not have a knee condition, the injury would be compensable under the category of risks "distinctly associated" with the employment. See also, Verge at 125, 639 A.2d 378 (Generally, an "employer takes the employee as the employer finds the employee"). We remanded because the employer had not been given the opportunity at trial to sustain its *415 burden of proving that the employee "did not accidentally slip, but rather that her knee condition caused the event and, therefore, her injury was caused solely because of her pre-existing or personal ... condition." Id. at 128, 639 A.2d 378. In other words, the employer would have to prove that the employee's knee condition caused her knee to give out which led to her "slip."
In the instant case, the judge of compensation found that petitioner's injury was caused by the twisting of his knee as he stepped to walk towards his workplace. The judge concluded that, because petitioner's injury was caused by doing something essential to his employment and beneficial to his employer, i.e. coming to work, his injury "arose out of employment." He distinguished Coleman, supra, on the grounds that the injury in that case was caused by an activity purely personal to the employee, smoking at lunchtime, as opposed to this case where petitioner was injured as a result of an activity necessary and beneficial to his employer.
As for the standard of review to be applied to the judgment below, this court "decide[s] only whether the findings of fact made by the judge of compensation could reasonably have been reached on sufficient credible evidence present in the record.... However, if there has been a mistaken application of the law to the facts, we must grant appropriate relief." Verge, 272 N.J. Super. at 123, 639 A.2d 378.
Under Verge, supra, 272 N.J. Super. at 128, 639 A.2d 378, and Spindler, supra, 11 N.J. at 38-39, 93 A.2d 171, the employer has the burden of proving that an injury occurred purely for personal reasons having no work connection. IMO's argument that no particular condition of the parking lot contributed to causing petitioner's injury, even if assumed arguendo to be factually correct, is insufficient to meet the requisite burden of proof. While the aforementioned parking lot cases all involved some condition in the parking lot, e.g. a patch of ice, they are not distinguishable from this case. The conditions in the parking lots merely made it clear that the injuries were not caused solely by *416 personal conditions of the employees. Thus, in Spindler, compensation was awarded even though no condition of the factory floor was shown to have caused the employee's fall because the burden is on the employer to prove that the injury occurred for purely personal reasons. 11 N.J. at 39, 93 A.2d 171. Furthermore, Spindler is not distinguishable from this case by the fact that petitioner was not as in that case engaged in his actual work duties when injured. Petitioner was in the process of reporting to work, an activity required by and beneficial to his employer, and so should not be treated differently than if he had been walking across a factory floor. Moreover, as we emphasized in Buerkle, supra, 26 N.J. Super. at 407, 98 A.2d 327, and Rice, supra, 65 N.J. Super. at 583, 168 A.2d 201, an employee does not have to be actually doing his job at the time of injury for the injury to "arise out of employment". Like the parking lot cases, Verge, which relied heavily on Spindler, is not distinguishable from this case by the fact that a rug on the floor may have contributed to causing the employee's injury. The employer's burden in that case was not to prove merely that the employee did not slip on the rug but to prove that the employer's personal knee condition was the cause of her "slip" and her injury. 272 N.J. Super. at 128, 639 A.2d 378.
Just as in Verge and Spindler the employers had the burden of proving that the employees' injuries were caused solely by personal conditions, IMO would have had to prove by a preponderance of the evidence that petitioner's injury was caused by a pre-existing condition and that petitioner's twisting step towards his workplace did not contribute to causing his injury. IMO did not satisfy this burden. The compensation judge found that the torn medial meniscus was caused by petitioner's twisting step, and IMO does not challenge this fact-finding. As for the chondromalacia patellae, the judge, in determining the extent of the award pursuant to N.J.S.A. 35:15-12(d), stated that
I have my suspicions as to whether or not there w[as] some pre-existence of the chondromalacia patellae which is pretty much a degenerative condition and I have some suspicion that there was probably some aching there before the accident *417 that's not causally related to the employment, but as a degenerative condition, but those are suspicions and I can't decide a case on the basis of suspicions with respect to proving pre-existing disability. The burden is on the [employer]....
IMO does not even argue on appeal that the chondromalacia patellae was a pre-existing condition. Moreover, given that chondromalacia patellae "may occur secondarily due to ... a torn meniscus," there is no reason not to defer to the judge's findings. Gordy-Gray, Attorney's Textbook of Medicine, vol. 1A, par. 7.70 (1989). IMO did not prove by a preponderance of the evidence that either the chondromalacia patellae or the torn medial meniscus was caused by a pre-existing condition independently of petitioner's twisting step on the parking lot.
The judge of compensation correctly distinguished Coleman, supra, on the grounds that the injury in that case resulted from an activity that was purely personal and had no work connection. This case is also distinguishable from cases involving heart attacks or heart disease because in those cases, N.J.S.A. 34:15-7.2 switches the burden of proof to the employee. See, Fiore v. Consol. Freightways, supra. As the Supreme Court noted in Fiore, "[a]pparently, the Legislature enacted [N.J.S.A. 34:15-7.2] based on its understanding that heart attacks are usually caused by natural or non-occupational causes." 140 N.J. at 471, 659 A.2d 436. In contrast, knee injuries like the one suffered by petitioner, as the trial judge emphasized, result from twisting while one's weight is on that leg; such injuries generally do not result from solely internal, "natural causes."
Unlike Verge, supra, this case does not need to be remanded because, while the employer in that case never had the opportunity to present its case, IMO had every opportunity to present its evidence. IMO's failure to satisfy its burden did not as in Verge result from the judge's rulings. There is no reason to grant IMO another bite at the apple.
The judgment of the Division of Workers' Compensation is affirmed.
NOTES
[1] Petitioner relies on Livingstone in his brief. However, Livingstone addressed the issue of whether an injury occurs "in the course of employment", not whether an injury "arises out of employment", and so is not relevant to this case.
[2] The Supreme Court cited all five of the aforementioned parking lot cases approvingly in Livingstone, supra, but was addressing the "in the course of employment" issue in doing so, not the "arising out of employment" issue. 111 N.J. at 99-102, 543 A.2d 45.