**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3568-21

DONALD SMITH,

    Petitioner-Appellant,

v.

H&H TRANSPORTATION, INC.,

    Respondent-Respondent.

_____

Submitted December 12, 2023 – Decided December 20, 2023

Before Judges Haas and Natali.

On appeal from the Division of Workers' Compensation, Department of Labor and Workforce Development, Claim Petition No. 2017-17816.

DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys for appellant (Paul R. Rizzo, on the briefs).

Fava Sand Law Group, LLC, attorneys for respondent (Terry Sand, of counsel and on the brief).

PER CURIAM

Petitioner Donald Smith appeals from the Division of Workers' Compensation's June 16, 2022 decision denying his motion for temporary disability and medical benefits under the Workers' Compensation Act, N.J.S.A. 34:15-1 to -142. After reviewing the evidence adduced at the hearing and the applicable legal principles, we affirm for the reasons set forth by the judge of compensation, as we are satisfied the decision was supported by sufficient credible evidence in the record.

Respondent H&H Transportation, Inc. (H&H) hired Smith as a truck driver in 2013. On January 7, 2017, while driving a tractor trailer for H&H, Smith got into a motor vehicle accident and sustained injuries to both legs, his left hip, and back.

Prior to the January 2017 accident, Smith had a history of back pain dating back to 2005, when he received treatment on his lumbar spine. In 2009, he reported "gradual onset of right low back pain [for] about three years which ha[d] become constant" and received additional treatment. Smith underwent a computed tomography (CT) scan in March 2016 which displayed "degenerative changes involving the thoracolumbar spine."

At H&H's direction, Smith saw an orthopedic surgeon, Dr. Anthony Parks, to whom he complained of "mid dorsal and low back pain." In addition to

2

referring Smith to physical therapy, Dr. Parks ordered x-rays and a magnetic resonance imaging (MRI) scan, which revealed a "right sided herniated disc at T7-T8." Because Dr. Parks could not "explain [Smith's] complaints in what [he] was seeing on the MRI," he determined a second opinion was necessary.

H&H then referred Smith to Dr. Ryan Cassilly, an orthopedic surgeon, who physically examined Smith and reviewed the previous MRI. Smith reported "pain in the middle of his back, occasionally radiating along the right side of his back, as well as pain in the middle of his lower back radiating across his back." Dr. Cassilly found Smith's "symptoms related to his thoracic and lumbar sprain [were] causally related to his injury on [January 7, 2017]," but also determined, based on the MRIs, that the "disc abnormalities [were] not related to his current symptoms" because the herniation at T7-T8 was "well above the region of [Smith]'s localizing discomfort" and there was "no nerve root compression at that level which would result in radicular symptoms." Additionally, Dr. Cassilly noted the disc at T7-T8 was calcified and the bone spurs between the vertebra had fused, reflecting a "long standing degenerative condition."

Accordingly, Dr. Cassilly concluded "there is no contraindication to the patient returning to full duty work as related to his thoracic and lumbar spine." Based on this opinion, H&H terminated temporary disability payments after

paying $729.49 per week from January 20, 2017 through May 5, 2017. On May 30, 2017, Smith filed a claim petition, asserting he suffered from low back pain, leg pain, and knee pain.

In August 2017, Smith saw Dr. Gregory Przybylski, a neurosurgeon, who physically examined Smith and reviewed previous imaging. He found the MRI scans reflected "a small left L5-S1 displacement[,] . . . a right L4-5 foraminal disc displacement[, and] a right T7-T8 . . . mixed signal intensity disc herniation" and concluded Smith "more likely than not had a T8 radiculopathy related to the T7-T8 disc protrusion." To confirm his diagnosis, Dr. Przybylski referred Smith for a CT-guided selective nerve root block at T7-T8. Smith ultimately underwent five procedures on his back between May 11, 2018 and August 30, 2020 under Dr. Przybylski's care, including a T7-T8 discectomy, removal of a section of the nerve root at T7, removal of a section of the nerve roots at T6 and T8, fusion from T6 to T9, and removal of an epidural hematoma occurring as a result of the fusion.

On November 30, 2022, Smith filed a motion for temporary and medical benefits, seeking physical therapy and medication for the injuries to his back based upon Dr. Przybylski's records and certification. See N.J.A.C. 12:235-3.2. H&H opposed the motion, and the parties appeared before a judge of

4

compensation for five days of plenary hearings in which Smith testified, along with experts Dr. Przybylski, Dr. Parks, and Dr. Cassilly.

Smith testified his annual employment-related physicals did not demonstrate any back issues leading up to the January 2017 accident. Although acknowledging Dr. Parks told him his herniated discs were degenerative, Smith denied Dr. Cassilly had told him "he felt that [Smith's] symptoms were related to degenerative issues, and not related to the Workers' Comp[ensation] motor vehicle accident." He also claimed to have told Dr. Przybylski, Dr. Parks, and Dr. Cassilly that he had received prior back treatment, but each failed to keep record of it.

Dr. Przybylski testified he diagnosed Smith with "thoracic radiculopathy after laminectomy" which was "related to his accident." He explained the MRI showed "a combination of soft or more acute disc herniation and hard or more arthritic disc herniation" at T7-T8, which indicated the accident caused an acute disc herniation which had "fully calcified over time." Dr. Przybylski agreed Smith suffered degenerative disc disease and acknowledged he had not reviewed the March 2016 CT scan.

A-3568-21

Dr. Parks testified Smith's x-rays and MRI reflected degenerative disc disease. However, he stated he found "no compression of the nerve to explain" Smith's continued complaints of pain.

Dr. Cassilly testified his evaluation of Smith did not show "any physical evidence of a thoracic spine injury" or "any spinal cord compression." Instead, he stated Smith's March 2017 MRI showed "multiple osteophytes or bone spurs coming off of his thoracic spine" which was not the result of acute injury but rather "long standing degenerat[ion] . . . at that part of the spine." Dr. Cassilly concluded the disc abnormalities were not "actively symptomatic given that they did not correlate with where [Smith's] pain was" and "none of [Smith's] surgeries were causally related to the" January 2017 accident. In support, he noted it was "very obvious" the herniated disc at T7-T8 was "fully calcified" in the March 2016 CT scan, taken before the accident. Additionally, Dr. Cassilly stated the accident had not aggravated Smith's pre-existing condition, because the size of the bone spur at T7-T8 had not changed and Smith's pain complaints were inconsistent with aggravation.

Dr. Przybylski provided additional testimony after reviewing the 2016 CT scan. He retracted his previous hypothesis that the disc had calcified as a result of the accident, but affirmed his diagnosis and conclusion Smith's condition was

6

A-3568-21

caused by his accident. Dr. Przybylski explained Smith's disc was previously asymptomatic but became symptomatic following the accident, requiring "surgical treatment to decompress that area."

He theorized "the narrow time window between the accident and the onset of symptoms" evidenced that Smith's pain was "traumatically caused." When asked if objective medical evidence existed supporting an aggravation theory, Dr. Przybylski noted Smith's condition improved upon nerve block treatment and explained "a muscle sprain and strain would not respond temporarily to a nerve block of a specific nerve whereas a painful nerve will." Dr. Przybylski also submitted a certification to supplement his testimony.

After considering the testimony and documentary evidence, the judge concluded Smith's "need for treatment [wa]s not causally related" to the January 2017 accident and denied his application for temporary and medical benefits. Considering the testimony of Dr. Cassilly and Dr. Przybylski, the judge found Dr. Cassilly's opinion that Smith's "current complaints are not work-related" to be "credible, logical and consistent, both medically and factually." The judge found the medical records indicated "evidence of long standing degenerative etiology rather than acutely post traumatic" injury. She determined the accident "did not exacerbate or accelerate [Smith's] underlying issues given the stability

7

of the T7-T8 degenerative pathology from [March 2016] through [December 2017] both in terms of identical size of the osteophyte as well as the fact that it had already autofused in 2016 . . . ."

The judge further explained her reasoning in a written amplification submitted to us pursuant to Rule 2:5-1(d). She concluded Smith's testimony was not credible, specifically noting he stated "he told all doctors that he had prior back history including seeing a chiropractor and receiving an injection when in fact Dr. Parks, Dr. Cassilly and Dr. Przybylski all testified that petitioner never told them about any prior back injury." She reiterated Dr. Cassilly's testimony was credible and his conclusion was supported by the record, while Dr. Przybylski's aggravation theory was "not supported by any objective testing." The judge maintained Smith's "complaints were related to prior disc pathology that was not changed or exacerbated because of the work-related motor vehicle accident." This appeal followed.[1]

---

[1] Because the June 16, 2022 order did not award any amounts for medical and temporary disability benefits, the appeal is likely interlocutory. Carberry v. State, Div. of Police, 279 N.J. Super. 114, 116 n.1 (App. Div. 1995). But cf. Della Rosa v. Van-Rad Contracting Co., 267 N.J. Super. 290, 293-94 (App. Div. 1993) (holding award of temporary benefits by judge of compensation is appealable as of right). We nevertheless have decided to grant leave to appeal nunc pro tunc and decide the merits.

Before us, Smith argues the court erred in determining his injuries were not related to the motor vehicle accident. In support, he contends the court gave undue weight to Dr. Cassilly's testimony, which he characterizes as "biased and unsubstantiated." Additionally, he argues the court ignored facts in the record, such as his previous physical examinations noting no back issues and the lack of necessary medical treatment for his back for "approximately seven years prior to the accident," to reach an illogical conclusion.

Our review of a final decision of a judge of compensation is limited and deferential. Lapsley v. Twp. of Sparta, 249 N.J. 427, 434 (2022). We accord "substantial deference" to the factual findings made by a workers' compensation judge "in recognition of the compensation judge's expertise and opportunity to hear witnesses and assess their credibility." Goulding v. NJ Friendship House, Inc., 245 N.J. 157, 167 (2021) (quoting Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998)). Thus, our review is "limited to 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole.'" Ibid. (quoting Sager v. O.A. Peterson Constr. Co., 182 N.J. 156, 164 (2004)). "We may not substitute our own factfinding for that of the [j]udge of [c]ompensation even if we were inclined to do so." Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App.

9

Div. 2000).  Rather, we defer to the agency unless its findings of fact are "so wide of the mark as to be manifestly mistaken."  Ibid. (citations omitted).

Additionally, "[c]ompensation judges have 'expertise with respect to weighing the testimony of competing medical experts.'"  Martin v. Newark Pub. Schs., 461 N.J. Super. 330, 337 (App. Div. 2019) (quoting Ramos, 154 N.J. at 598).  A "judge of compensation 'is not bound by the conclusional opinions of any one or more, or all, of the medical experts.'"  Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999) (quoting Perez v. Capitol Ornamental, Concrete Specialties, Inc., 288 N.J. Super. 359, 367 (App. Div. 1996)).  "That [the judge] gave more weight to the opinion of one physician as opposed to the other provides no reason to reverse th[e] judgment."  Martin, 461 N.J. Super. at 337 (alterations in original) (quoting Bellino v. Verizon Wireless, 435 N.J. Super. 85, 95 (App. Div. 2014)).

In our review, we are mindful that the Workers' Compensation Act "is humane social legislation designed to place the cost of work-connected injury on the employer who may readily provide for it as an operating expense."  Hersh v. Cnty. of Morris, 217 N.J. 236, 243 (2014) (quoting Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 94-95 (1988)).  The Act should be "construed and applied in light of this broad remedial objective."  Ibid. (quoting Livingstone,

10

111 N.J. at 95).  Nevertheless, the petitioner bears the burden of establishing the compensability of their injuries by a preponderance of the evidence.  Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 263 (2003).

The Act authorizes an award of workers' compensation benefits to an employee injured in an accident "arising out of and in the course of employment . . . ."  N.J.S.A. 34:15-7; see also Hersh, 217 N.J. at 238.  For the injury to be compensable, there must be "a causal connection between the employment and the injury."  Coleman v. Cycle Transformer Corp., 105 N.J. 285, 290 (1986).  "It must be established that the work was at least a contributing cause of the injury and that the risk of the occurrence was reasonably incident to the employment."  Ibid.  The "test asks 'whether it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere.'"  Id. at 290-91 (quoting Howard v. Harwood's Rest. Co., 25 N.J. 72, 83 (1957)).

"New Jersey adheres to the proposition that the employer takes the employee as the employer finds the employee, with all of the pre-existing disease and infirmity that may exist."  Verge v. Cty. of Morris, 272 N.J. Super. 118, 126 (App. Div. 1994).  Thus, an employee with a pre-existing condition may receive compensation "where an employment-injury activates or aggravates

a pre-existing disease or weakened condition unrelated to employment causing disability." Polizzi v. N.J. Transit Rail Operations, Inc., 364 N.J. Super. 323, 332 (App. Div. 2003) (quoting Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J. Super. 187, 208 (App. Div. 1958)). The injury is not compensable if a pre-existing condition is its sole cause. Sexton v. Cnty. of Cumberland/Cumberland Manor, 404 N.J. Super. 542, 556 (App. Div. 2009).

We have examined the evidence and are satisfied the compensation judge's decision was supported by the record. The judge credited Dr. Cassilly's testimony over Dr. Przybylski's theory of aggravation, finding Dr. Cassilly's opinion Smith's injury was not caused or aggravated by the motor vehicle accident to be "credible, logical and consistent, both medically and factually." She noted this position was supported by a comparison of the 2016 and 2017 CT scans which showed "no worsening of the disc herniation." On the other hand, the judge found Dr. Przybylski's "testimony was not supported by any objective testing and was in fact contradicted by it," as his position changed after reviewing the 2016 CT scan.

Relying primarily upon her review of Smith's historical medical records and Dr. Cassilly's testimony, the compensation judge found "[t]he [motor vehicle accident] did not exacerbate or accelerate [Smith's] underlying issues

given the stability of the T7-T8 degenerative pathology from [March 8, 2016] through [December 27, 2017,] both in terms of identical size of the osteophyte as well as the fact that it had already autofused in 2016." These points, she concluded, "provide[] definitive objective proof that there is no evidence of acute T7-T8 pathology related to the [motor vehicle accident]." Additionally, the judge noted "significant marginal osteophytes/bone spurs extending throughout the majority of the . . . spine, indicating long standing degenerative process." Because the judge's findings were reached on sufficient credible evidence present in the record and "[w]e may not substitute our own factfinding for that of the [j]udge of [c]ompensation even if we were inclined to do so." Lombardo, 328 N.J. Super. at 488, we affirm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-3568-21